# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Yan Zhao | ) |
| 2036 Fort Davis Street, SE, Apt. A | ) For Illegal Expropriation of Private Property and |
| Washington, DC 20020 | ) Unlawful Nationalization of Private Enterprises |
| | ) Without Immediate, Adequate, or any Compensation |
| Amer Group LLC. | ) In Violation of Law of Nations, U.S. Law and Jus Cogens |
| 108 West 13th Street | ) Intellectual Property Stealing and Piracy |
| Wilmington, DE 19801 | ) Unjust Enrichment; Breach of Contract, Intentional and |
| | ) Reckless Interference of Contractual Relationship |
| An Bang Group LLC. | ) Civil Conspiracy in Violation of Foreign Agents |
| 108 West 13th Street | ) Registration Act in Aiding and Abetting the CCP's |
| Wilmington, DE 19801 | ) Extraterritorial Expansion of its Illegal Taking |
| | ) Alien Tort Claims Act (ATCA) (28 U.S.C. § 1350) |
| AB Stable Group LLC. | ) The Torture Victim Protection Act of 1991 (TVPA) |
| (Formerly Ame Group Inc.) | )  Pain and Sufferings and Wrongful Death |
| 251 Little Falls Drive | )  Also Action invoking Foreign Agents Registration |
| Wilmington, DE 19808 | )  Act (Anti-Foreign Espionage Act) |
| AB Stable Group LLC. | )  Anti-Government Corruption Act 18 USC 201 |
| | )  and US Federal Communist Control Act |
| and | ) Rule 23 **Class Action** |
| | ) Trial of Facts by Jury Prayed |
| World Awards Foundation Inc. | ) |
| 251 Little Falls Drive | ) |
| Wilmington, DE 19808 | ) |
| | ) |
| On their Own Behalves and on behalf of | ) |
| All Other Similarly Situated Victims | ) |
| Including Estates of the Wrongful Deaths | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| Keqiang Li (For his official capacity), of | ) |
| The Politburo of the Chinese Communist | ) |
| Party (CCP) | ) |
| 2 Fuyou Street, Xicheng District | ) |
| Beijing, China 100017 | ) |
| | ) |
| Shuqing Guo | ) |
| The CCP Party Secretary | ) |
| The Branch Committee of Chinese | ) |
| Communist Party (CCP) for | ) |
| **China** Banking and Insurance Regulatory | ) |
| Commission (CBIRC) | ) |
| JIA NO. 15 Financial Street | ) |
| Xicheng District, Beijing, 100033, China | ) |

Hua Yu, the Secretary of the CCP Branch for )
China Insurance Security Fund Co., Ltd. )
17/F S. Wing15/F, Fortune Resource Intl Center )
18 Taipingqiao Street, Xicheng District )
Beijing. China 100032 )
  )
Xiaofeng He )
Chinese Communist Party Branch of )
Dajia Insurance Group Co. Ltd. )
(Formerly An Bang Insurance Group Co. Ltd.) )
Suite 1202, 12th Fl. No. 6 JianGuoMenWai Street )
Chaoyang District, Beijing, China )
  )
The CCP Branch for Baoshan Prison )
6178 Hutai Road )
Luodian Tsp. Baoshan District, Shanghai, China )
  )
AB Stable VIII LLC. )
251 Little Falls Drive )
Wilmington, New Castle, DE, 19808 )
  )
The Hon. Trovis Laster, The Vice Chancellor of )
The Chancery Court of Delaware State )
500 North King Street )
Wilmington, DE 19801 )
(In His Personal Capacity for Wanton Negligence) )
  )
Matthew Belger )
1313 N. Market Street, 6th Floor )
Wilmington, DE 19801 )
  )
Defendants )

---

## VERIFIED COMPLAINT

**Nature of the Case**

1. This is a Rule 23, FRCP Class Action Complaint filed by U.S. nationals, natural and juridical alike, as well as great numbers of similarly situated victims, alive and deceased, natural or juridical persons, in and out of the United States, as a class to sue against the primary Defendant as the Chinese

   Communist Party (CCP), a totalitarian ruling bloc, a paramount institution which "controls"

everything"* in communist China, as an illegal Mafioso expropriator by organized violence,** thief/pirate of U.S. intellectual properties, perpetrator of mastermind thereof in commission of tortures, degrading and all other inhumane treatment, and its accomplices/co-conspirators aiding and abetting the CCP, in and out of the United States in its recent illegal expropriation drive in violation of law of nations, of customary international law, *jus cogens*, and the U.S. Federal law.

2. The U.S. District Court has subject matter jurisdiction over those selected defendants and may exercise long arm personal jurisdiction over those defendants in protection of vital interests of the U.S. nationals living in the United States pursuant to Federal Law.

3. State Judicial officers who acted in wanton negligence of the magnitude of insanity by grossly abusing the judicial power under intrinsic frauds upon the Court situation shall not be shielded under the State/Municipal Immunity Acts, particularly given to the fact that this case addresses imminent issues of jus cogens.

4. Plaintiffs, by and through their attorneys, allege upon personal knowledge and belief as to their own circumstances, and upon information and belief (based on the preliminary investigation of the undersigned counsel) as to all other matters, that substantial evidential support does exist or will exist after a reasonable opportunity for further investigation and discovery as a result of trial and pretrial proceedings, in support of the following:

5. Named Plaintiffs and the similarly situated class of plaintiffs are either the co-founders, capital investigators, shareholders of either natural or juridical persons in the United States and the People's Republic of China, who, putting them together, privately owned a very famous giant financial institution, namely, An Bang Insurance Group Company, Limited (hereinafter "An Bang"). An Bang (U.S. Trademark Registration #5074065 USPTO Certified for AB An Bang Group, first in use in coermerce, in 20010100) was promoted in Beijing, China in the year of 2002, with promotion of An Bang's Co-Founder Andy Bang (aka: "An Bang") in corroboration with his business counterpart Late Mr. Xiaolu Chen, the son of deceased PRC co-founder Marshall Chen Yi, with An Bang's Co-Founder Andy Bang's input of capital investment of 290 Million Hong Kong dollars (Approximately US$43Million according to the exchange rate at the time), via corporate channels of World Award Foundation Inc., and Beijing Dahuabang

---

*"Chinese communist party is the paramount power of the People's Republic of China…"U.S. Department of State: "Human Rights Practice Country Report-China" for 2019, page 1 Exhibit 1.

**U.S. House of Representative H.R.8491 - To designate the Chinese Communist Party (CCP) as a transnational organized crime group.116th Congress (2019-2020)  Exhibit 2

Investment Group Co. Ltd., as its seed money.  Approximately a year after the founding of An Bang, these two co-founders invited Mr. Xiaohui Wu, grand-son-in-law of Deng Xiaoping, the name represents once China's maximum dictator, to join An Bang.  After Xiaohui Wu joined the company, An Bang had grown and expanded very quickly. When Mr. Xiaohui Wu was arrested in later 2017, followed with his set-up conviction and sentencing to 18 years term, prior to the illegal nationalization against An Bang under Mr. Xiaohui Wu's control, the company's assets had been approximately RMB three trillions, approximately half trillion U.S. dollars.

6.   An Bang was a privately owned enterprise, consisting of more than fifty named outstanding shareholders, most of whom were private entrepreneurs*,  during the period from the year 2002 through earlier 2018, shortly after the arrest followed with its CEO and legal representative Mr. Xiaohui Wu's being fallen into the traps of the expropriators by organized state violence.

7.   Anbang's total assets, before its being illegally taken by the Defendants, reached three trillion Chinese yuans (RMB), approximately equalizing half trillion U.S. dollars;

8.   Rapid business growth as one of China's most miracle private business successes within the privately owned industry in China may have been achieved through three foremost significant components: a. An Bang's Co-Founder Andy Bang's visionary promotion together with Late Mr. Xiaolu Chen, together with Mr. Bang's sizable input of HK$ 290 Millions (approximately US$43Millions) as the initial capital investment through his World Award Foundation Inc. (hereinafter "WAFI")** Mr. Bang found U.S. Company incorporated in Delaware State, during its formation period; b. An Bang's Co-Founder Andy Bang's innovative creation, later registered and granted by the governments of the United States, USPTO, the "AB An Bang Group Trademark 5074065" trademarks as the famous business logo for the good will trade name as of "An Bang" sweeping through the land mass of China, of Asia; c. After Mr. Xiaohui Wu's being introduced into An Bang's corporate management at the top level in the year 2004, he brought into the Company with extraordinary talents in business operation and expansion, together with then China's first family's influence as the grandson in law of Late Deng Xiaoping, once the paramount dictator of China.   Before Mr. Xiaohui Wu was entrapped, falling, and persecuted and An Bang

---

*The DRAA Blanket Agreement has named great number of outstanding An Bang's business partners. Please referred to relevant pages of DRAA Agreement as **Exhibit 3**.
**World Awards Foundation Inc. (WAFI) is a US incorporated entity was not allowed to directly invested into such China's Financial Institution as An Bang at the time.  Therefore Beijing Dahuabang Investment Group Co. Ltd., a China's domestic company, and some other Chinese domestic companies, were named as the capital investors on behalf of WAFI to input the HK$ 290M.  **Exhibit 4**

was illegally taken, confiscated, expropriated and illegally nationalized, it had become China's top one trillion dollar privately owned financial institution, with no "one of".

9. Both mass media and social media has described precisely that illegal taking in form of unsophisticated robbery of such private financial conglomerate as nationally and internationally prestigious financial institute as of An Bang, followed with ruthless persecution targeting its core leader Xiaohui Wu, Xiaolu Chen, is a monumental historical turning point, not only reflective of the deadly struggle between the fading and declining reformer groups under the banner of Deng Xiaoping and the Maoist hardliner extremist group's setting back policy leaning to Stalinist economy under its maximum dictator Keqiang Li, but also the struggle between uprising and totally corrupted totalitarian novel rich profiteers and the ordinary private business entrepreneurs, as the newly oppressed victims almost none of whose national leaders have ever survived such politically motivated ruthless purge under Xi's "new deal", the deal of illegal expropriation of private properties and privately owned enterprises for the benefits of re-centralization of the nation's economy in Stalinist economic notion. Such an infamously called "2nd wave of violent land reform of communist China" has claimed innocent lives, liberties and property without due process.

10. Illegal Nationalization of An Bang, and unlawfully converting An Bang's privately owned giant assets into such a newly incorporated, state-owned Dajia Insurance Group Co. Ltd., ("Dajia" in Chinese characters means "we the masses inclusive of everybody", hereinafter referred to as "Dajia") incorporated as late as July 2019.

11. Such an illegal expropriation was led by Chinese Communist Party Branch overseeing the China Banking and Insurance Regulatory Commission (CBIRC). Comrade Shuqing Guo, the CCP 1st Secretary for the Party Branch of the CBIRC, a broadly suspected corrupt communist ranking official, has been steering the wheels of that the illegal nationalization under the disguises of "corporate acquisition (for free)", under the auspices of the primary Defendant Keqiang Li, the Standing Committee member of the Politburo of the Chinese Communist Party's national central committee. Though Keqiang is not the maximum dictator in such summit ruling bloc of the 7-member Standing Committee of Chinese Communist Party's Politburo, Defendant Keqiang Li has been the top and paramount Tsar in China's national economic and financial affairs, as the Premier of the Central Government, namely, the State Council of the PRC.

12. The process of such illegal nationalization against An Bang was being painstakingly engaged in very slow paces coupled with several officially pronounced delays. The official Xinhua News Agency officially pronounced that the taking was finally completed from "An Bang" to "Dajia" on February 22, 2020. Nevertheless, finality was officially pronounced on July 9, 2020.**Exhibit 5**

13. Before the illegal expropriation undertaken by the totalitarian communist regime of China through its front runner the CCP branch of the CBIRC and the party boss of the CBIRC, Defendant Shuqing Guo, under the auspices of the summit authorities of the CCP, more than 98% of this multi-trillion An Bang's wealth and assets belonged to private entrepreneurs, among whom Mr. Xiaohui Wu was the CEO and the ultimate decision maker of An Bang before he was arrested. (Mr. Xiaohui Wu did not make any capital investment into An Bang according to Chinese Court records.)

14. During the high tide of illegal nationalization under the arising Stalinist/leftist hardliner dictatorship, seeing demises and extinctions of China's privately owned business conglomerates one after another, late Mr. Chen, Xiaolu, and Mr. Wu, Xiaohui, in corroborating with An Bang's Co-Founder Andy Bang, made plans to transfer An Bang's equities from inside China to overseas using the tools of overseas property purchase, piecemeal by piecemeal.  Consequently, An Bang purchased 20 pieces of ultra-expensive U.S. properties, including $2billion worth of New York landmark property, Wardorf  Hotel.  An Bang's total overseas property investment reached US$10 Billion.

15. The primary purpose behind these overseas purchase of properties by An Bang under the auspices of Mr. Xiaohui Wu and late Mr Xiaolu Chen was actually to lawfully transfer An Bang's privately owned wealth away from the anticipated illegal expropriation by the Stalinist Beijing communist dictatorship under the eyelid of the maximum dictator, in order to preserve portion of their hard-earned wealth under the protection of the USA's constitutional democracy, which was also good for the economy of the host country, i.e., the United States and other Western States.

16. On May 15, 2017, anticipating the inevitable doom, three weeks before Mr. Xiaohui Wu was arrested in a communist dictators' set-up, a DRAA Blanket Agreement (Exhibit 6) which made An Bang's Co-Founder Andy Bang, the capital investor of An Bang, and also An Bang's Chinese trade mark  (trade  mark  4274061)  proprietor,  and  all  his  U.S.  incorporated  companies  the distributees/beneficiaries of approximately one third of An Bang's multitrillion-dollar assets and property, in compensation, to An Bang's Co-Founder Andy Bang's initial capital investment through corporate entities in both the United States and China, as well as compensation to the trade mark piracy for using An Bang (AB) trademarks and trade name.  Consensus on compensation to him through his LLCs was credibly reached among Mr. Xiaohui Wu, the legal representative, late Mr. Xiaolu Chen, then Vice Chair of the Board, a parallel controller of An Bang, and An Bang's co-founder Mr. Andy Bang.

17. Old and privately owned An Bang's program to preserve portion of the private property, as an exemplary mode of resistance against the CCP Politburo's illegal expropriation drive, and its reluctance to unconditionally surrender such sizable private properties through joint efforts made by

its co-founders and then chief executives via conclusion and attempted enforcement of 2017 DRAA Agreement, as well as the legal fight in reinstatement and defense of intellectual properties, had attracted stormy retaliation, causing fatality and harms in false imprisonment, incommunicado detentions plagued with ruthless, life threatening tortures.

18. Defendant Chinese Communist Party's politburo's new deal in redistribution of the national wealth, after corrupted stealing and robbery of the undistributed national wealth was drawn to its end of exhaustion by the communist oligarchy novel rich thugs and overnight profiteers, by simply robbing the private business entrepreneurs by using state organized violence in the forms of illegal nationalization and expropriations in violations of the law of nations, international customary law, any civilized legal norms and jus cogens, The nationwide expropriation drive was deemed as the CCP's second wave of its violent land reform, Almost all the nation's first and second line of private business entrepreneurs have fallen, if they failed to unconditionally surrender their private properties, assets and their private enterprises to the "Party", the expropriators, in the disguises of "law" of totalitarian type.

19. These thugocratic *expropriators* under the infamous banner of Chinese Communist Party are also playing such role of thief/pirate of the U.S. Intellectual Property as of AB An Bang Group 5074065 issued by the USPTO;  Prison guards, extrajudicial executioners, under the state organized violence under its constitutionally endorsed "dictatorship of proletariat". (Art. I of the PRC Constitution)

20. An Bang co-founder Andy Bang's such business corroborators as Xiaohui Wu, Xiaolu Chen, were driven to be demised along with a long line of fallen private entrepreneurs in the CCP Politburo's expropriation drive: Late Mr. Zeng Chengjie, multibillionaire, An Bang's small shareholder, sentenced to death and executed without noticing to his family and defense counsel.  The left-over multibillion dollar worth of private assets and properties, factories and corporations, all were found stolen and distributed in midnight, for his only crimes of being rich without solid CCP back-up; Late Mr. Xu Ming, Dalian Shide Group Co. Ltd., found killed for officially pronounced "cardiac arrest" a few weeks before his release from 4-year jail term, another An Bang shareholder.

21. Mr. Xiaohui Wu was being ruthlessly tortured in custody, especially he filed an appeal to the Higher People's Court of Shanghai after he received 18-year sentence with the assistance of his defense counsel, Mr. Youxi Chen, China's nationally prestigious criminal defense counsel, who was momentarily safe, no one can predict how long will such safety be.

22. Mr. Wu was severely tortured.  The ruthless tortures that occurred night and day in the Baoshan Prison, Shanghai, under the CCP Party Branch of the PRC Ministry of Justice, Labor Reform Bureau, has rendered him with such a unshaped physical conditions, that necessitated Baoshan

Prison authority to flatly barred any visitations by his family members, especially his aging and ailing mother.

23. Even plea from his ex-mother in law, Ms. Nan Deng, Deng Xiaoping's daughter, once China's 1st daughter, *de facto*, whose plea made for Wu's mother for visitation of her son, was repeatedly denied by the Chinese authorities.  The credible source says that reason of barring such bottom-line humanitarian plea is simply because Mr. Xiaohui Wu has already lost his human shape due to Chinese communist prison wards infamously spreading habitual practice of inhumane, ruthless tortures.

24. Mr. Xiaohui Wu, presumably is still breathing, has not only suffered loss of his private property and liberty, he has sustained devastating pains and sufferings in incarceration in the CCP's jail.

25. Mr' Xialu Chen, the vice Chair and deputy general manager of An Bang, of its origin, was also incarcerated in make shift jail for coercing him to unconditionally surrender all his property rights and legitimate interests in An Bang.  Shortly after his release from make-shift detention, Mr. Xiaolu Chen was found dead in sudden death with unknown course in the bathroom of his cottage in Sanya City, Hainan Island on February 28, 2018.  It remains mystery of the cause of his sudden death. The family members, in front of Mr. Xi Yuanping, the brother of the CCP maximum leader, refused the former's recommendation that Chen's coffin should be covered with the Chinese Communist Party's flag in his funeral upon An Bang's Co-Founder Andy Bang's persistence by reciting Chen's will.

26. The CCP led 2nd violent land reform, of expropriation drive, has claimed lives, driven with tortures and inhuman degrading and maltreatments.  It involves civil wrongful deaths and pain and suffering in help of such CCP looting process against private enterprises and private entrepreneurs.

27. Such CCP politburo led nationwide expropriation does not stop at the national border of the People's Republic.  Its extraterritorial expansion, mostly in corruptive manners,  thugocratic claws has penetrated into the power house of the United States, municipal, state, or federal levels alike, by and through the PRC's U.S. agents, mostly unregistered with the DOJ. The ominous momentum may have caused growing judicial subcultural phenomenon on municipal and state level.

28. The  DRAA Agreement, which employs the Delaware Rapid Arbitration Act (DRAA) to protect the lawful property owners' private entitlement, inalienable property rights, and legitimate interests, resolutely provided, particularly in its Article 79, provided that An Bang compensated An Bang's Co-Founder Andy Bang, by and through all American companies he formed and controlled, including one intermediate Chinese enterprises, Beijing Dahuabang Investment Group Co. Ltd., also acting as capital receiver and capital investor on behalf An Bang's Co-Founder Andy Bang,

US$90Billion, equalizing 30% of An Bang's total accumulated net assets, which are RMB two trillions approximately 300billion at the time.  The DRAA Agreement also provided no-contest clause coupled with skyrocketed amount of hefty penalties against any challenges and oppositions for the drafters' serious concerns of "death penalties and other severe consequences" yet to be triggered by such challengers. (See Exhibit 6)

29. The DRAA Blanket Agreement can be deemed as the mode of strategic resistance mobilized within the framework of law to fight against the violent CCP's illegal expropriation campaign targeting lawful private entrepreneurs.  The Agreement sets the roadblock of law trying to defeat such illegal expropriation and in preservation and defense of the private entrepreneurs' lawful property rights within the framework of law being respected in civilized society under the rule of law.

30. Article 79 of the DRAA Blanket Agreement specifically provides that 10% of the compensation funds should be first cleared with transfer of the titles of 20 USA situated properties (and Canadian properties), including **Four Season Hotel situated at Washington DC,** and US$ 1billion cash deposits under the possession of An Bang's USA branch office to the five (5) named beneficiaries as of the contractual parties under that DRAA Agreement, as the initial payments made as the "performance bonds".

31. Apparently for the obvious benefits of prompt enforceability in disposition of the properties outside the territorial jurisdiction of the current Chinese Communist Party ruling bloc, the designers of the DRAA Blanket Agreement has selected the world's most efficient Delaware Rapid Arbitration Act to protect An Bang's private owners' rights and entitlement from any harmful communist expropriators' extraterritorial invasion by setting forth Article 88 and other provisions.

32. Article 88 of the DRAA Blanket Agreement provides for each party to select one arbitrator for any hearing, rather than having these arbitrators appointed by a Delaware court, while two thirds of the arbitrators, implicating two thirds of the participating parties to the Agreement,  shall determine the ultimate issues of the disposition performance and of the Agreement's interpretation.

33. The way for disposition of properties under the DRAA Blanket Agreement designed and provided in the provisions of Article 88 is permissible, safeguarded and encouraged by DRAA 10 Del. C. 5801 (3), 5805 (a ) and 5805 (a )(5 ).

34. In the light of DRAA law governing Blanket Agreement, particularly its Article 88, a panel of five arbitrators being appointed by the five beneficiary parties under the 2017 DRAA Blanket Agreement, with absence of one of the six anticipated arbitrators, approximately 7 months after the designated Claimants' well proven valid service of the Notice of arbitration to Party A, and the acknowledgment of the receipt of the service by the Respondent. The Respondent An Bang, whose

legal representative, Mr. Xiaohui Wu, was in prison for being legally incapacitated, and another possible representative of the Respondent Party A, late Mr. Xiaolu Chen, was likely and suspiciously murdered, procedurally satisfied the 15-day Service of the process requirement, formed the arbitration panel pursuant to DRAA 10 Del. C. 5801 (3), 5805 (a ) and 5805 (a )(5 ).

35. On July 21, 2019, the five-member arbitration board, validly formed according to DRAA with no slightest doubt as matter of law, rendered the 6 Arbitration Awards in favor of Claimants, strictly according to the 2017 DRAA Blanket Agreement by both its wording as well as its jurisprudential principles of the humanity, in absence of one arbitrator on behalf of the Respondent Party A, namely, An Bang, due to the latter's incapacity to join.

36. The DRAA Agreement also provided very severe and hefty liquidated penalties to prevent and punish any challengers to object the "performance and interpretation" of the Agreement, the non-contesting clause in addition to Claimants take all provisions set forth in Article 88.

37. Noticeably, these arbitration awards, which were later challenged in questionable, little relevant Delaware Chancery Court, have in full expectation and satisfaction to the Agreement's designers/signatories' purpose and intention explicitly written in the Agreement's Article 88: Two thirds of all six signatories, meaning 4 arbitrators, rather than 5, may determine the contractual performance and the contract's interpretation! The Agreement by its clear-cut text empowers and authorizes the beneficiaries/Claimants chosen arbitrators, even one of them defected, to overrule the remotely possible one thirds minority arbitrators defeating efforts, as the ultimate safety valve to withstanding any late transfigured, alienated, non-cooperating, hostile, and post-taking-over by CCP dictator's neo-An Bang revolts. Article 88 is a carefully designed and devised security mechanism in protection of the valid and vital interests of the Beneficiary-Claimants under the 2017 DRAA Blanket Agreement, the vital interests of that privately owned financial institutions' real owners, legitimate private entrepreneurs.   Such a design would not have been defeated without powerful intervening force of a tiny portion of the power house on this side of the ocean.  On the very surface, such an intervention was triggered by two factors:  Incompetent legal representations by Delaware local counsels and suspicious judicial activism from the Chancery Court inclusion with the former chancery clerk's pro-CCP conspiracy in apparent intrinsic frauds upon the court.

38. Neo-An Bang, namely, Dajia Insurance Group Co. Ltd. ("Dajia"), which is an ulter ego of the illegal Chinese Communist expropriator armed with state organized violence, now a state owned enterprise as the front runner of the CCP party cell of the CBIRC, under the auspices of the Politburo of Chinese Communist Party, a transnational totalitarian criminal Mafioso organization, a totally irrelevant 3rd party having utterly no-standing, as to the chancery court to raise well-funded

or suspiciously over massive attacks against the plaintiffs and the arbitration awards.  These "third-party" irrelevant attacks even expanded to attacking of the qualification of the arbitrators and against the service of the well proven arbitration service of the process. Both are irrelevant, nonsensical and wasteful issues.   (Neo-An Bang's new boss the CCP is not legitimate party to any related litigations for strictly absence of standing.).

39. The incompetent legal counsel for the post-arbitration litigation also committed clerical error by misrepresentations the resulting or contributory misgiving by the Hon. VC Laster's deliberate entrapment and strategic misjudgment in want of knowledge and expertise: The Claimants' correct and precise defense tactic should have first, based upon the arbitration awards, to file Ex Parte TRO to preserve the integrity of these 20 USA properties (and Canadian properties) based upon the arbitration awards coupled with showing of the DRAA Blanket agreement, with or without any further summary proceedings for being "deemed confirmed" and final without court's judicial intervention pursuant to 10 Del. C. 5801 (4 ), and most importantly, DRAA Section 5810 (a ).  The self-deemed confirmed arbitration awards may or may not necessarily be entered into the superior court pursuant to DRAA Section 5810 ( c).

40. Once the DRAA Arbitration as final, there as here, an appellate review of their legitimacy exclusively belong to the Supreme Court, rather than Chancery Court 10 Del C. 5809 (a) While such an appellate review is not compulsory:  "Notwithstanding any other provision of this section, an agreement may provide for: (1) No appellate review of final award". Section 5809 (d ) (1 ). Article 88 of the DRAA Blanket Agreement provided the two thirds of the arbitrators' decision and interpretation is final, *i.e.*, no appellate review.

41. Implementing all these defendants' extraterritorial expansion and penetration of their corroborated civil conspiracy in and out of the United States to ultimately deprive all the named and unnamed Plaintiffs as a class private property rights, legal challenge came from defendant An Bang, mostly in the Chancery Court of Delaware.  In order for a differentiation between Mr. Xiaohui Wu, late Mr. Xiaolu Chen and Mr. Andy Bang's preexisting old An Bang of private ownership, and a newly transformed An Bang by CBIRC of State ownership, by excluding their original legitimate private owners, namely, Dajia, a post-expropriation neo-An Bang without Xiaohui Wu, Xiaolu Chen (or of his estate) without Andy Bang without participation of more than 50 private shareholders.  The new name for the neo-An Bang has now become "Dajia". Dajia literally means "public at large". It is a legality disguises of the corrupted state ownership by totalitarian kleptocrats and thugocrats in the Stalinist economics.

42. The neo-An Bang, namely Dajia, of state ownership, was officially pronounced its completion of

illegal expropriation of old An Bang of private ownership at least twice, as February 22, 2020 and again as later as July 9, 2020, if not further delayed afterwards with 3rd pronouncement (Exhibit 7).

43. The most fearful challenge was from the neo-"An Bang", aka, Dajia Insurance Group Co. Ltd., as the front runner of the Chinese Communist Party's Politburo and its subordinating CBIRC party branch led by Shuqing Guo, the CBIRC CCP Branch Secretary, and the CISFC the back-up of the Chinese Communist Party's Politburo and its subordinating CISFC party branch led by Comrade Ms, Hua Yu, the CCP Branch Secretary. All these "Comrades" are the domestic agents representing the CCP Politburo's interests driven by illegal expropriators in and out of communist China, with assistance of such their U.S. corroborating accomplices as the AB Stable VIII LLC, Mr. Matthew Belger and his former boss, co-Defendants VC Laster, in aiding and abetting such civil or criminal conspiracy of illegal expropriation in violation of international law, all legal norm of international practices, jus cogens, and U.S. law.  .

44. The legal challenges to the 6 Arbitration Awards based upon the DRAA Blanket agreement laid out the following grounds: Denial of the legitimacy of the Arbitration Process under the excuse that the Respondent An Bang (meaning: neo-An Bang or fake and newly reformed An Bang, namely "Dajia" ) was not informed about, neither had it consented to, the arbitration process.  Testifying witnesses Ms. Tianzhen Fan, Manager of the Legal Department of the Neo-"An Bang", Ms. Yulin Song, the Assistant to the General Manager of the neo-"An Bang", presented written hearsay testimony in support of the CCP's challenge to the Arbitration: Respondent Neo-an Bang was not aware of the Arbitration Proceedings, and did not consent to such an Arbitration. (See Exhibit #7 and 8)  Such a challenge from the self-interested party sounds good at the first glance, yet it is completely wasteful, and even irrelevant.  Claimants' under the DRAA Blanket Agreement did prove the legitimacy of their service of the Arbitration Notice. What if such service of process were insufficient? The challenger had apparently failed to read Article 88 of the Agreement.  Even though the Respondent had his chance to oppose the arbitration, his one vote cannot overrule the two thirds majority vote for "yes", neither could that lone vote overturn any arbitration outcome. This is the mechanism thoughtfully preprogrammed to resist the anticipated CCP Politburo's illegal nationalization drive.

45. Noticeably, these two key witnesses in defense of the vital interests involving at least hundreds billion dollars on the CCP Politburo side have never cast slightest doubt in the legitimacy of the DRAA Blanket Agreement either in the Delaware Chancery Court or in Beijing Administrative Court governing Intellectual Property disputes, where that 2017 DRAA Blanket Agreement was presented as party's admission evidence in support of Plaintiffs Andy Bang and his corporations

claim on his An Bang (An Bang) Chinese trade mark 4274061.

46. The Defendants, based upon what they invoked and interpreted 2017 DRAA Blanked Agreement, raised intellectual property litigation with the U.S. Patents and Trademark Office  (USPTO) starting June 8, 2017, against plaintiffs, and Defendants lost the litigation together with their 408 billion U.S. dollars claim for the liquidated damages. (Based upon Clause set forth in the 2017 DRAA Blanket Agreement.) Plaintiff Amer Group LLC Counterclaimed.  The Appellate Board of the U.S. Patent and Trademark Office dismissed An Bang's appeal and affirmed the USPTO's decision. Consequently, appellant's duplicate marks copying these Plaintiffs' trademark with their own trademark 3386354 and 3386355 were pronounced invalid and revoked by the USPTO on December 26, 2018.

47. In attacking the legitimacy of the arbitration awards being awarded in unanimous vote of all five presiding arbitrators, the 5 out of the 6 if a full panel were seated, under the preprogrammed "each party selects one arbitrator" formula, rather than a two thirds majority quorum, the Defendants' side, by their paid or likely overpaid U.S. *agent* for the Defendants CCP expropriators, namely,  Matthew Belger, Esq., ridiculously attacked the qualification of the members of the arbitration board by fraudulently attacking the qualification of the arbitrators by misquoting a purchased "expert opinion" given by a retired FBI cop, having attempted to rewrite the DRAA law of the State of Delaware merely for the interests of the Chinese Communist Party Politburo's illegal benefits in its expropriation against private entrepreneurs and U.S. intellectual property proprietors in enhancement of the PRC's notoriously infamous transnational piracy of the U.S. intellectual properties.  .

48. For the privately owned property rights alone, the 2017 DRAA Blanket Agreement, under the joint auspices of late Mr. Xiaolu Chen, and Mr. Xiaohui Wu, had actually set forth compensation amount to pay back to An Bang's Co-Founder Andy Bang and his U.S. A. incorporated LLCs, which pre-existed earlier than An Bang in China, from 408 billion U.S. dollars as to An Bang's Co-Founder Andy Bang won from the USPTO with finality on December 26, 2018, provided these Defendants withheld their oppositions, motions for oppositions or appeals.

49. The most dramatic intervening enhancement in support of the Chinese Communist Party Politburo's notoriously infamous expropriation drive is a July 2, 2020 VC Laster's Bench Order to command this Globe to stop rotating, his universal ban on any legitimate claim of the private entitlement rights against communist dictator's take-over.

50. Plaintiff's titles, property rights and lawful interests were clearly provided in the Arbitration awards, derived from DRAA Blanket Agreement, as well as set forth in their intellectual property, which

had been invaded by the extraterritorial pirates, as of the People's Republic of China under the totalitarian kleptocracy reign as of these defendants are the cause of actions for illegal expropriation and illegal intellectual property piracy.

51. Knowing this is a DRAA rapid arbitration case with the chancery court's extremely limited jurisdiction, knowing this case involved the struggles between the legitimate owners of the private properties and the Communist party's illegal take-over for free from the lawful holder of these legitimate interests   Chinese communist Party Politburo's illegal expropriation drive the Hon. Travis Laster, the presiding Vice Chancellor of the Delaware Chancery Court, entered a "default judgment" under the urge of Mr. Matthew Belger, "Dajia's" legal counsel, the former clerk of the VC Laster,  on July 2, 2020.  For the relevant part, the 07/02/2020 "Default Judgment" ruled: "The petitioners, and those acting in concert with them, …, managers, attorneys affiliates, and any other persons in active concert or participation with the petitioners) are permanently enjoined from:

> a.Representing that the petitioners obtained a judgment from this Court in connection with this action; b. making any further filings *in any court* relating to any purported judgment obtained from this Court in connection with this action; c. representing to any court or person that as a result of this action or any filings made in this action, the petitioners hold title to, or have any real property interest in, any of *the properties owned by Dajia or its subsidiaries*, including but not limited to: (followed is a long list of the 18 properties, plus a catch-all clause: xix: Any properties owned by Retirement Concepts,Canada or its subsidiaries"Emphasis added.**Exhibit 8**

52. VC Laster's Order to stop the globe from rotating was so powerful and sweeping, that this globe for the small portion of Delaware has actually stopped rotating by freezing.  For more than 3 months and more, DE attorneys through out the State, regardless brazen ones or over-cautious characters, old and young, academic types or pragmatic personality, all have flatly declined Plaintiffs' invitation for representing the Plaintiffs, after they had chance reading the following scary ordinance:

"The Respondents shall provide a copy of the Motion to enter Final Judgment and Dismiss this This Action With Prejudice, including its supporting documents, to the Office of Disciplinary Counsel (ODC) so that ODC may review the conduct of the Delaware attorneys who acted on behalf of the petitioner in this proceeding, determine whether any violations of the Rules of Professional Conduct have occurred, and evaluate whether any disciplinary action is warranted.  The Respondent shall also bring to ODC's attention the conduct of Steven Nielsen, a California attorney, in making a filing with the Delaware Court of Common Pleas…"  (Please refer to VC Laster's July 2, 2020 Bench Ruling of the Universal Ban as Exhibit 8)

53. Questions arises as to who told VC Laster that these 18 plus 2 Canadian properties under the title of once the privately owned "An Bang" are "*the properties owned by Dajia or its subsidiaries*", a

state owned entity as an integral part of the Chinese Communist Party Politburo even before its in-China, domestically driven illegal expropriation process was not even completed and finalized. The completion of such unlawful expropriation from private into the CCP Party's was officially finalized on July 7, 2020, a week after the VC Laster's ahead of time accomplice in aiding and abetting the communist expropriation inside China! Then, who told the VC Laster that Defendant neo-An Bang, aka, Dajia, or its communist expropriators had any *or lawful nexus to a privately owned company and privately owned properties* even to appear before any U.S. Courts to challenge the lawful titles to those private owners, when Article 79 of the DRAA Blanket Agreement had clearly transfer the title of all these properties, equalizing only one fortieth treble damages of the Plaintiffs' intellectual property set forth as the performance bond paid to the Plaintiffs here.

54. Neither Article 88 of the DRAA Blanket Agreement, nor DRAA Rule of any provisions, gave the empowerment of  this VC Laster to make any disposition of these privately owned properties in helping moving from the lawfully designated private transferees to Chinese Communist Party Politburo as the illegal expropriator.

55. Judge Laster's unethical, highly suspicious judicial activism for unknown reasons in unauthorized disposition of properties under DRAA Blanket Agreement implemented by DRAA Arbitration Awards rendered pursuant to Article 79 and Article 88, was wanton, rather than ordinary, negligence in malice to furtherance in aiding and abetting communist China's extraterritorial expansion and penetration of on-going illegal expropriation of private property, not only illegally taking plaintiffs' tangible property, but also such intangible properties as the specified liquidated damages paying to a decade long trade mark piracy practices. Therefore, the VC Laster's outrageous misconducts for violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 818 (1982)  Vice Chancellor's such "Wanton negligence" in recklessness aiding and abetting totalitarian China's anti-humanity crimes is not shield by the Delaware Municipal Government's Immunity Act pursuant to the exception clause under 10 Del C. 4011 ( c )

56. But for the VC Laster's unauthorized, baseless, and abusive extension activist type of accomplice to aiding and abetting Chinese Communist Party's anti-humanity crimes in violation law of nations and of jus cogens, no conspiracy of the PRC's extraterritorial illegal action of expropriation would be accomplished.

57. The majority of defendants and others involved in this case are state actors who violate international law and U.S. law against the law-abiding U.S. citizens and U.S. A skyrocketed amount of private properties, assets belonging to their lawful owners have been illegally

expropriated in the hands of the totalitarian communist regime. Therefore, it is necessary to briefly introduce PRC.

**Back Ground Information of the Case**

58. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 54 here of as it set forth fully and at length herein.

59. This instant case involves, among others, Defendants as state actors of illegal expropriation of sizable private properties from law abiding U.S. citizens and nationals in violation of international law and the law of the United States, it appears necessary to give a brief introduction about the background information as of general country condition of the People's Republic where cause of action arises.

60. The Mainland China under the name of the People's Republic of China (PRC) is a totalitarian regime of thugocracy under the dictatorship of Chinese Communist party (CCP), a totalitarian Mafioso clique as the ruling bloc since 1949. Starting Korean War period around 1950, the CCP has mobilized violent land reform to expropriate real property from its legitimate land owner through state organized violence, in which millions of private real property owners were physically eliminated with massive executions rallies or by tortures and lynches to deaths, together with their lawful entitlement to land and houses, through out the nation except for "yet to be liberated areas" of Taiwan and Hong Kong then.  Such a violent expropriation of private properties, we call it "first land reform by state organized violence".

61. On September 20, 1954, PRC promulgated the PRC Constitution for the first time. Later, it was revised many times.  No matter how many times it has amended its own "constitution",  Article 1 thereof always remains unchanged: manger dictatorship of proletariat as the Stalinist nature of its state mobilized violence and political and legal discrimination against the super majority of the PRC's nationals.  With such a notoriously infamous totalitarian declaration in place, taking, looting, expropriation and nationalization of private properties and assets by state organized violence under the name of "dictatorship of proletariat"  are always commonplace.

62.  After the year 1999, when all national wealth accumulated through generations since 1949 in the state owned enterprises was distributed among corrupted Chinese communist red families and novel-riches in inclusion thereto, being indicated that the State owned enterprises' total debts were exceeding the total assets, meaning an insolvency by its entirety, the mode of redistribution of the accumulated national wealth has been drastically changed into a jungle rule type taking,  looting

and expropriation targeting private owners, particularly private owners of real property.   Some scholars depicted such "expropriation drive as the 2nd violent land reform using organized state power under the name of dictatorship of proletariat. A replica of communist China's 1st land reform by violence starting nationwide in 1950, yet in more sophisticated forms.   Expropriation and creeping expropriation of private property was taken, from time to time, are in the sheer disguises of "law enforcement".   While in its deep nature, it makes no difference to what happened during the first wave of "land reform by state organized violence." One homogeneous process gets through the two "reforms" in big gap of time frames: jungle rule.

63. Illegal takings, lootings, expropriations by powerhouse or corrupted communist officials behind powerhouse as state actions for the easy benefits ended up in the pockets of corrupted officials, under the sheer disguises of law has become commonplace under the dictatorship of totalitarian Kleptocracy.   Such a practice in violation of universally accepted legal norms have been mostly focused upon domestic owners of properties, real or movable, tangible or intangible.   Yet such an expropriation drive has from time to time also takes as victims covering the U.S. Corporate entities as well as natural persons, citizens or legally admitted permanent residents of the United States under its expropriation drive, immediate expropriation or creeping expropriation.

64. On March 11, 2018, PRC's latest amendment to the constitution, the constitution amended under the CCP's recommendation, formally put that the "CCP leadership is the most essential feature of socialism with Chinese characteristics" written in the first and second paragraphs of the Constitution. CCP is the formulation of the Constitution and Law. The law is also the implementation of the Constitution and laws, and this kind of implementation has effectively entered all areas of national governance, various Links, all aspects. (Based on public information "PRC Constitution")

65. The CCP is the only ruling party in PRC, the highest political leadership of PRC, and fully reflects the "Trinity" in the Constitution

66. The institutional apparatus of the CCP,  the PRC, and the "trinity" leadership system of the Chinese People's Liberation Army are all under the lone life long dictator Keqiang Li, Chairman of the PRC, Secretary General of the CCP and Chairman of the Central Military Commission of the People's Liberation Army (PLA).

67. The CCP is the boss of the PRC. Its summit and centralized daily operational leadership is the CCP's politburo, while the highest ranking leadership in totalitarian nature is the Politburo's

Standing Committee, among the seven members of the Standing Committee, Defendant Keqiang Li is one of the top leaders who oversees the illegal nationalization of private properties and privately owned enterprises. The "state-owned enterprise" under the name of PRC State Council (i.e., the central government) has been called as "centralized enterprises", which is an integral part of the Chinese Communist Kleptocrats' collectively owned State, namely, "the People's Republic of China" .

68. The State Council of the People's Republic is the paramount powerhouse known as the Chinese Central Government.

69. Among these "centralized enterprises, 126 enterprises monopolized ones were those largest "central enterprises",  while many of them are listed in the United States stock exchange market. (Based on public information) At this moment, such top notch financial institution as Dajia, newly converted from private ownership into State ownership, was not included because the expropriation process was yet to be finalized.

70. The Central Committee of the Chinese Communist Party (CCP) recently issued a "Regulations on CCP's Political and Legal Work" which clearly stipulates that the Central Committee of the Chinese Communist Party（CCP） exercises absolute leadership over political and legal work through out China..

71. According to the US Department of State (USDOS) Annual Report on Human Rights Practices, CCP is the highest authority of PRC. CCP is now in the world.

72. One of the few remaining anti-human repressive ruling cliques. The CCP regime is the only one in the world that constitutes the growing lethal threats against the United States and its allies. Totalitarian regime threatened by deadly strategy.

73.  Mike Pence, Vice President of the United States, US Secretary of State Mike Pompeo, United States, the Attorney General William Barr made several public speeches, which fully confirmed the PRC under the CCP, a serious violation of international law, serious Violation of US law including PRC's stealing of the U.S. Intellectual properties.

74. On October 1, 2020, a House Bill H.R.8491 was introduced to the Floor - To designate the Chinese Communist Party (CCP) as a transnational organized crime group for the116th Congress (2019-2020). Among the recitation of fact finding in support to designate the CCP as a transnational organized crime group, the Bill finds that pilferage and piracy of intellectual properties by Chinese persons and entities was presented as criminal offense alongside the most recent China's intentional or reckless mishandling of the CCP virus-(Covid19 pandemic).

75. Illegal expropriation taking place victimizing the group of these five named Plaintiffs occurred in such a changed macro-political landscape.

**Parties:**

**Plaintiffs:**

Plaintiff  Yan Zhao

76. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 72 here of as it set forth fully and at length herein.

**Plaintiff Yan Zhao**

77. Plaintiff Yan Zhao is a permanent resident of the United States of ethnic Chinese origin.

78. Plaintiff Yan Zhao,  is a 5.1% shareholder of the Amer Group LLC and 5.1% Shareholder of the AB Stable Group LLC. (AKA Ame Group Inc., USA).  Plaintiff Zhao is a Director for the World Award Foundation Inc.

79. Plaintiff Yan Zhao is fully entrusted and authorized by the An Bang co-founder and all boards of Directors of all the LLCs founded by the An Bang's cofounder Andy Bang.

80. Amer Group LLC, AB Stable Group LLC. (AKA Ame Group Inc., USA) and the World Award Foundation Inc. all these three corporations are the contractual parties, signatories and distributees to the 2017 DRAA Blanket Agreement.

81. Being a shareholder and director, Plaintiff Yan Zhao is one the victims under Defendants' joint and several move to expropriate private ownership and invasion of intellectual property and such illegal expropriation's extraterritorial penetration into the United States, as the consequences, such extraterritorial expansion of illegal expropriation of such sizable private assets originally belonging to him for a large chunk thereof, has illegally taken away Plaintiff Zhao's personal property interests without due process;

82. Mr. Zhao was journalist working with Beijing Bureau of the New York Times.  He was also a internationally famous prisoner of conscience who was incarcerated in Chinese prison serving his three-year sentence for allegedly leaking of the top state secrets, a typical Chinese Communist "pocket crime" prepared for political dissidents.

83. Plaintiff Yan Zhao is a Laureate of Year 2005-2006 International Press Freedom Award". Mr. Zhao is a professional social media journalist. He has been a guest speaker with such international broadcasting services as the Voice of America, and of Radio Free Asia.

Plaintiff Yan Zhao is currently residing at the 2036 Fort Davis Street, Apt. A, Washington, DC 20020.

84. Being the shareholder and the Director, Plaintiff Yan Zhao was fully entrusted with An Bang's Co-Founder Andy Bang and the boards of all the LLCs. An Bang's co-founder Andy Bang is also the designer and the ultimate lawful proprietor of the U.S. Trade mark 5074065  **(See Attachment to this Complaint as Exhibit N)** whose equivalent mark registered in China is Trademark 4274061, the mark was infringed by Defendant An Bang. The solution to compensate such trademark/trade name piracy leads to solution through conclusion of Article 79, of the DRAA Blanket Agreement.

85. An Bang's Co-Founder Andy Bang was the founder/co-founder of the following corporations: An Bang Insurance Group Co. Ltd. of China, U.S. AnBang Insurance Group LLC., World Award Foundation Inc. Amer Group LLC., AB Stable Group LLC. Now represented by principal Plaintiff Yan Zhao, with full credentials;

86.  An Bang's Co-Founder Andy Bang was the designer, registrant, proprietor  and sole owner of the An Bang's trade mark as well as its trade name in good will.

87. An Bang's Co-Founder Andy Bang is the first capital investor by investing, through his World Award Foundation Inc. and the other five participating companies, to China's domestic counterpart intermediary recipient Beijing Da Huabang Investment Group Co. Ltd., and other four participating investors.  The total amount these companies invested into Defendant An Bang was HK$290 Million, approximately US$43Million as seed funds on An Bang's earlier stage during its initiating period.

88. Most importantly, An Bang's Co-Founder Andy Bang is the signatory to the DRAA Blanket Agreement by signing and sealing the Agreement's signature page.

89. An Bang's Co-Founder Andy Bang was the designated Party F as the Agreement's designated beneficiary for himself, and on behalf of other Agreement designated beneficiary and distributees as of the Parties C, D and E regarding the intentional receiving the liquidated damages for U.S. $ 900Billion, excluding penalties, along with other designated recipients/beneficiaries.

90. Consequently, An Bang's Co-Founder Andy Bang is the most heavily hit victim under China's illegal expropriation campaign.

91. An Bang's Co-Founder Andy Bang is a national, a legally admitted permanent resident (LPR) of the United States, of ethnic Chinese origin.

 **Plaintiff Amer Group LLC.**

**92.** Plaintiff Amer Group LLC. is a juridical person, a privately owned corporation which was established and incorporated by An Bang's Co-Founder Andy Bang in the State of Delaware in 2011.

93. The corporate headquarter of Plaintiff Amer Group LLC. is situated at 108 West 13th Street

Wilmington, DE 19801

94. Amer Group LLC, along with An Bang Group LLC., AB Stable Group LLC. (AKA Ame Group Inc., USA) and the World Award Foundation Inc.  all these Four USA incorporated  corporations are the contractual parties, signatories and distributees to the 2017 DRAA Blanket Agreement.

95. Being a deprived recipient and beneficiary involving An Bang's private property preservation and survival against illegal expropriation drive by Chinese communist Party, Plaintiff Amer Group LLC is one the victims under Defendants' joint and several moves to expropriate private ownership and invasion of intellectual property it owns and shares as well as such illegal expropriation's extraterritorial expansion of illegal expropriation of such sizable private assets originally belonging to it for a large chunk thereof, has illegally taken away Plaintiff's private property rights and legal titles without due process;

**Plaintiff An Bang Group LLC.,**

**96.** Plaintiff An Bang Group LLC. is a juridical person, a privately owned corporation which was established and incorporated by An Bang's Co-Founder Andy Bang in the State of Delaware in the year of 2005.

97. The corporate headquarter of Plaintiff is situated at 108 West 13th Street Wilmington, DE 19801

98. An Bang Group LLC., along with Amer Group LLC, AB Stable Group LLC. (AKA Ame Group Inc., USA) and the World Award Foundation Inc. all these Four USA incorporated  corporations are the contractual parties, signatories and distributees to the 2017 DRAA Blanket Agreement.

99. Being a deprived recipient and beneficiary involving An Bang's private property preservation and survival program against illegal expropriation drive by Chinese communist Party, Plaintiff An Bang Group LLC is one the victims under Defendants' joint and several moves to its expropriate private ownership and invasion of intellectual property it owns and shares as well as such illegal expropriation's extraterritorial penetration into the United States. As consequences, such extraterritorial expansion of illegal expropriation of such sizable private assets originally belonging to it for a large chunk thereof, has illegally taken away Plaintiff's private property rights and legal titles without due process;

100.   **Plaintiff AB Stable Group LLC.,** (AKA: Ame Group Inc. USA)

**101.**   Plaintiff AB Stable Group LLC. Plaintiff An Bang Group LLC. is a juridical person, a privately owned corporation which was established and incorporated by An Bang's Co-Founder Andy Bang in the State of Delaware in the year of 2002.

102.   The corporate headquarter of this Plaintiff is situated at 251 Little Falls Drive, Wilmington, DE

19808.

103.    AB Stable Group LLC. (AKA Ame Group Inc., USA), along with An Bang Group LLC., Amer Group LLC, and the World Award Foundation Inc. all these Four USA incorporated  corporations are the contractual parties, signatories and distributees to the 2017 DRAA Blanket Agreement.

104.    Being a deprived recipient and beneficiary involving An Bang's private property preservation and survival program against illegal expropriation drive by Chinese communist Party, Plaintiff AB Stable Group LLC is one the victims under Defendants' joint and several moves to its expropriate private ownership and invasion of intellectual property it owns and shares as well as such illegal expropriation's extraterritorial penetration into the United States. As consequences, such extraterritorial expansion of illegal expropriation of such sizable private assets originally belonging to it for a large chunk thereof, has illegally taken away Plaintiff's private property rights and legal titles without due process;

**Plaintiff World Award Foundation Inc.**

**105.**    Plaintiff World Award Foundation Inc. is a non-profit corporation which was established and incorporated by An Bang's Co-Founder Andy Bang in the State of Delaware in the year of 2000.

106.    The corporate headquarter of this Plaintiff is situated at 251 Little Falls Drive, Wilmington, DE 19808.

107.    The World Award Foundation Inc, along with AB Stable Group LLC. (AKA Ame Group Inc., USA), An Bang Group LLC. and Amer Group LLC.,   all these Four USA incorporated corporations are the contractual parties, signatories and distributees to the 2017 DRAA Blanket Agreement.

108.    Being a deprived recipient and beneficiary involving An Bang's private property preservation and survival program against illegal expropriation drive by Chinese communist Party, Plaintiff World Award Foundation Inc. is one the victims under Defendants' joint and several moves to its expropriate private ownership and invasion of intellectual property it owns and shares as well as such illegal expropriation's extraterritorial penetration into the United States. As consequences, extraterritorial expansion of illegal expropriation of such sizable private assets originally belonging to it for a large chunk thereof, has illegally taken away Plaintiff's private property rights and legal titles without due process;

**All Other Similarly Situated Victims as a Class of Plaintiffs**

109.    All Other Similarly Situated Victims as a Class of more than 50 Plaintiffs being victimized shareholders and private co-owners of An Bang under the Politburo of the Chinese Communist

Party's accelerated nationwide drive of illegal expropriation in violation of international law, all other customary international legal norms, *jus cogens* and U.S. Federal Law.

110.    All Other Similarly Situated Victims as a Class of more than 50 other unnamed Plaintiffs, though they are not the intended beneficiaries of 2017 DRAA Blanket Agreement, they are victimized shareholders and private co-owners of a rightful, privately owned An Bang, which is now under the Politburo of the Chinese Communist Party's accelerated nationwide drive of illegal expropriation. The perpetrators of such illegal nationalization include unnamed Defendants who have inflicted systematic tortures and victims of such wrongful deaths having resulted from or in enhancement of, such illegal expropriation drive, which are gross violation of international legal norms of human rights and such jus cogens against anti-humanity crimes being set forthin international treaties against anti-humanity crimes of Genocide, Tortures, and slavery labor,

111.    All Other Similarly Situated Victims as a Class of more than 50 Plaintiffs as of being victimized shareholders and private co-owners of An Bang under the Politburo of the Chinese Communist Party's accelerated nationwide drive of illegal expropriation also include unnamed victims of Defendants inflicted systematic tortures and victims of such wrongful deaths having resulted from or in enhancement of, such illegal expropriation drive, which are gross violation of international legal norms of human rights and such *jus cogens* against anti-humanity crimes such as the prevention and punishment against Genocide, Tortures, and slavery labor,

112.    These alleged illegal expropriation of such sizable private assets originally belonging to all these deprived victims as the class of similarly situated Plaintiffs whose private property rights and legal titles have been ripped off without due process, without compensation according to the expropriators' agenda.

113.    More seriously, the process of illegal nationalization has been driven by the Defendants' state organized violence. During the process of such illegal process of violent expropriation of private properties from An Bang, some members of the class are victimized being tortured and some are believingly having been assassinated or killed by wrongful deaths.

**Defendants**

**Defendant CCP's Politburo, being Represented by Keqiang Li (For his official capacity only)**

114.    Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 109 here of as it set forth fully and at length herein.

**115.**    Defendant Keqiang Li is one of the seven-member Standing Committee of the Politburo of the Chinese Communist Party's (CCP's) Central Commission.  Chinese Communist Party is a totalitarian organization which is the paramount power structure ruling the Country of the People's

Republic.

116.   The Standing Committee of the CCP's Politburo is the summit decision maker.  Standing Committee member Keqiang Li, as of the head of this communist country's State Council, i.e., the Central Government under total control of the CCP,  is responsible for such decision making and oversight of the CCP/PRC's economic and financial activities and operations.  Illegal Expropriation of private enterprises followed with corporate reorganizations and deprivation of private owner's legal titles, rights and interests, being safeguarded with such state organized violence, are within Defendant Keqiang Li's duties and his scope of decision making and oversight functions.

117.   Therefore, Defendant Keqiang Li must be held accountable for what happens within his official capacity and scope of his official duties.

118.   Chinese Communist Party is generally deemed as a hostile transnational criminal group which poses lethal strategic threats against the United States and all free mankind.

119.   Such well documented criminal oiffenses against the United States are foremost threesome: Spreading of devastating CCP virus into the United States which has claimed 220,000 American lives thus far during this epidemic infection which is still on going; broadly infection spydemics, i.e., espionage and flood of Chinese corruptions; and number three: broadly infected intellectual property piracy against the United States agencies, corporations and citizens..

120.   Defendant Keqiang Li's principal place of business is located at 2 Fuyou Street, Xicheng District, Beijing, China 100017.

121.   So far, there is no evidence collected to show that Defendant Keqiang Li, does personally involve in the very conspiracy against Plaintiffs including tortures, false imprisonment and illegal expropriation of legitimate private properties by the other defendants in concert.   Defendant Keqiang Li is therefore sued merely for his official capacity as the Standing Committee member of Chinese Communist Party.

122.   All the crimes against humanity or violations of jus cogen was engaged under the daily operational leadership of the Central Government, say, State Council, of the People's Republic of China under the totalitarian reign of Chinese Communist Party's Politburo. Therefore, with either active control or reckless inaction, Defendant Keqiang Li, for his official capacity as the CCP Politburo's Standing Committee member and as the head of Chinese Central Government, should be held accountable and liable for all these wrongful misconducts.

123.   The Politburo of the CCP is also responsible for planning, budgeting, financing, coordinating, implementing, overseeing such illegal or criminal activities abroad for foreign corruptions, espionage, propaganda, united front works (PR), foreign agents recruitment and exploitation; and

all subversive activities abroad mostly in the United States.

**Defendant Shuqing Guo, the Secretary, Branch Committee of Chinese Communist Party (CCP) for China Banking and Insurance Regulatory Commission (CBIRC)**

124.    Defendant Shuqing Guo, the Secretary for the Branch Committee of Chinese Communist Party (CCP) for China Banking and Insurance Regulatory Commission ( hereinafter "CBIRC"), is an integral part of Chinese Communist Party (CCP), the ruling bloc of the People's Republic of China (PRC).  The Branch Committee of Chinese Communist Party for the CBIRC is totally controlling the daily operation of the Defendant CBIRC.

125.    The Branch Committee of Chinese Communist Party (CCP) for China Banking and Insurance Regulatory Commission (hereinafter "CBIRC"), is the top decision maker of the CBIRC. Defendant Shuqing Guo is the CCP Boss of the Party Branch, making the CBIRC as an integral part of the Chinese Communist Party (CCP) and its Politburo.

126.    One of the CCP's domestic and transnational criminal activities is its illegal expropriation of private entities and private business entrepreneurs in violation of international law.  Defendant CBIRC's main role in such criminal activities is to make decisions, implement the CCP's decision and oversee the implementation of these illegal activities, which expropriates the China's top one privately owned financial institution, namely, AnBang Insurance Group, Co. Ltd.

127.    On June 28, 2019, Defendant Shuqing Guo of the CCP Branch CBIRC dispatched a working group, behaved like a Mafioso hitting squad, to "take over", for free, the privately owned enterprise, namely, AnBang Insurance Group, Co. Ltd. (hereinafter An Bang) apparently under the command from the Defendant Politburo of the CCP.

128.    The expropriation process against the class of the Plaintiffs, implemented by CBIRC, with corroborating assistance of all co-defendants in and out of China, has encircled all corporate property, wealth, assets, such as real properties, official buildings, fixtures and facilities, cash deposits under the company's financial reserve, all cash equivalent exchange instrument HDCs, vehicles, stationary, goodwill, trade marks which was originally stolen from Plaintiffs, without any compensation, or any plan to compensate the private owners.

129.    The expropriation process implemented by CBIRC while having encircled and taken all corporate property, wealth, assets, such as real properties, official buildings, fixtures and facilities, cash deposits under the company's financial reserve, all cash equivalent exchange instrument HDCs, vehicles, stationary, goodwill, trade marks which was originally stolen from Plaintiffs, without honoring the liability to inherit the company's contractual debts, neither did it have any dignity to return and compensate its predecessor's stolen intellectual property from the United States.

25

130.    During the domestic expropriation process, this Defendant enthusiastically involved in litigations to evade its liability to return and compensate the stolen intellectual property, the AB trademark.

131.    During the domestic expropriation process, Defendant involved in persecuting these disobeyed, or contempt Private entrepreneurs as of Xiaohui Wu, by inflicting ruthless, lasting and lingering tortures with the hands of the prison wards and false imprisonment against victim Xiaohui Wu. litigations to evade its liability to return and compensate the stolen intellectual property, the AB trademark.

132.    Defendant CBIRC's expropriation of private properties did not stop at the border of the PRC, its illegal expropriation has expanded into the United States by abusing the State of Delaware court systems to continue its trade mark piracy and expropriating 20 ultra-expensive properties, which had been in the ownership of An Bang Defendant was illegally taking, and was converted into the ownership of the contractual parties of these Plaintiffs as the performance bond through 2017 DRAA Balnket Agreement, followed with Arbitration Proceedings, which Defendant CBIRC refused to inherit,

133.    Defendant CBIRC timely received the notice of DRAA arbitration by the arbitration board by signing the registered mail while declined to participate in the arbitration process.  Defendant's knowing forfeiture within the timeframe has resulted in the Arbitration board's properly rendering the arbitration awards (Exhibit 9) in default pursuant to Delaware Rapid Arbitration Act.

134.    Defendant CBIRC, acted in concert with its paid U.S, counsels, suspiciously using the means and ways of foreign corruptions of Chinese characteristics, has subversively overturned the normal procedures of the Delaware Chancery Court in obvious violations of Delaware local law, to lead to unauthorized, illegal and wrongful disposition of Plaintiff's private properties into the State Owned newly incorporated state owned enterprise, namely, Dajia Insurance Group Co, Ltd. (Dajia)which did not even have standing in these litigations.

135.    Defendant CBIRC, in the process of enhancing such CCP's illegal expropriation/nationalization programs to steal An Bang together with its trillion dollars assets, has caused the false imprisonment, tortures, stave labors against such disobedient private entrepreneurs as of Xiaohui Wu, and others, in corroborating with the Wards of the Baoshan Prison.  Defendant CBIRC may also suspiciously masterminded, conspired and implemented such lethal plot as assassinating, and murdering victim Xialu Chen, the vice chair of the Board and deputy general manager of An Bang, in enhancement of such vicious and illegal expropriations of An Bang.

136.    Defendant CBIRC may also have involved in such extraterritorial illegal and immoral practice

to expand the PRC's persecution against rights-defending lawyers into the Court house of the State of Delaware by threatening and actually targeting the Plaintiffs' DE and California Defense counsels into bar council by threatening to rip off their livelihood.

137.    Defendant CBIRC suspiciously caused, through its American agents with apparent failure to have registered with the U.S. Department of Justice, to turn the Delaware Chancery Court into an enclave of the PRC's illegal expropriation tools, an integral part of Chinese Communist Party's overseas expansion of its undue influence in furtherance of its internationally condemned crime against humanity by suspiciously using VC Laster as the CCP's instrumentation in aiding and abetting its criminal project of illegal expropriation of private properties, and promoting communist China's signature illegal practice in continuing intellectual property piracy in the United States by abusing the DE judicial systems in trampling Plaintiff's due process rights under the 5th and 14th Amendment.

138.    Though it may depends upon further investigation, through discovery or with the involvement of U.S. Federal agencies, Defendant CBIRC's practice in the United States, may have violated the following U.S. Federal Laws: Foreign Agents Registration Act to block its U.S. agents from registering with the USDOJ, Communist Control Act; Bribery of U.S. officials in violation of 18 USC 201 in addition to other violations.

139.    Defendant CBIRC's principal place of the business is JIA NO. 15 Financial Street, Xicheng District, Beijing, 100033, China.

**Defendant Hua Yu, CCP Secretary, Chinese Communist Party Branch of** CISFC

140.    Defendant Ms. Hua Yu is the Secretary of CCP Branch Committee, Chairwoman of the Board of China Insurance Security Fund Co., Ltd. (CISFC).

141.    This Defendant's principal place of business is situated at 17/F S. Wing15/F, Fortune Resource Intl Center, 18 Taipingqiao Street, Xicheng District, Beijing. China 100032.

142.    The Branch Committee of Chinese Communist Party (CCP) for China Insurance Security Fund Co., Ltd. (CISFC), is an integral part of Chinese Communist Party (CCP), the ruling bloc of the People's Republic of China (PRC).  The Branch Committee of Chinese Communist Party for the CISFC is totally controlling the daily operation of the Defendant CISFC.

143.    The Branch Committee of Chinese Communist Party (CCP) for China Insurance Security Fund Co., Ltd. (CISFC), is the top decision maker of the CISFC.  Defendant Hua Yu is the CCP Boss of the Party Branch, making the CISFC as an integral part of the Chinese Communist Party (CCP) and its Politburo.

144.    One of the CCP's domestic and transnational criminal activities is its illegal expropriation of private entities and private business entrepreneurs in violation of international law.  Defendant CISFC's main role in such criminal activities is to make decisions, implement the CCP's decision and oversee the implementation of these illegal activities, which expropriates the China's top one privately owned financial institution, namely, AnBang Insurance Group, Co. Ltd. **For instance, in February 2018, after Xiaohui Wu was falsely arrested and imprisoned, the conspiracy in nationalization of the privately owned An Bang by corporate reorganization was implemented. CISFC, being an active co-conspirator loudly pronounced to the public that it had input RMB 62.4billion Chinese yuan, approximately US$9.5billion, into An Bang, now Dajia, for corporate reorganization, in February 2019, as a prelude to total expropriation plan.  In less than one year after the newly incorporated Dajia took the ownership of An Bang, Dajia immediately sold privately owned An Bang's properties in numerous places in and out of China for more than 100billion Chinese yuan altogether, approximately 40billion yuan more than it had allegedly received from CISFC for its total input amount.**

145.    Defendant Hua Yu's functions and role as well as the role of China Insurance Security Fund Co., Ltd. (CISFC) under her oversight is similar to Defendant Shuqing Guo and that of CBIRC in driving the illegal expropriation programs under the command of the CCP's Politburo.  Therefore, the description of this Defendants and the agency she represents may be omitted for paper reduction purpose. However, the distinction between the two is that this defendant's functional role is focused upon budgeting, and ensuring the other defendants' activities with financial resources of the CCP's national revenue.    .

**Defendant Xiaofeng He, the CCP Branch Secretary, Chinese Communist Party Branch of Dajia Insurance Group Co. Ltd.   (Formerly An Bang Insurance Group Co. Ltd.)**

146.    Defendant Xiaofeng He, one of the masterminders of the civil or criminal conspiracy in expropriating the lawful property rights of the Class of Plaintiffs,  is the CCP Branch Secretary, Chinese Communist Party Branch of Dajia Insurance Group Co. Ltd.  (Formerly An Bang Insurance Group Co. Ltd.)

147.    Chinese Communist Party Branch of Dajia Insurance Group Co. Ltd. (Formerly An Bang Insurance Group Co. Ltd.) (hereinafter referred to as "Dajia" or "Neo-An Bang"), is under the oversight of Defendant Xiaofeng He,  is not an ordinary business enterprises as many people living in constitutional democracy of the West may from time to time misunderstand. Defendant Dajia, or Neo-An Bang, was an integral part of the Chinese Communist Party (CCP), a corrupted totalitarian organization and a broadly believed transnational criminal group. It allows itself become an

instrumentation of the CCP's such criminal practice as illegal expropriation of private properties and entities by state organized violence and other repressive and persecutoral means, such as tortures, extrajudicial killings, false imprisonment, slavery labor, foreign espionage, foreign corruption act in violation of 18 USC 201, recruitment of foreign agents in violation Federal Communist Control Act. Etc.

148.   Normally, Defendant Dajia's wrongful torts may have mirrored what Defendant CBIRC has been doing, as the latter's subordinating arm.

149.   **We must understand that Expropriation of privately owned An Bang's twenty (20) ultra-valuable U.S. properties into the illegal expropriators' hands are not ordinary corporate merge or corporate reorganization.  As to these twenty real properties, *changing hands* from An Bang to Dajia, from private citizens' ownership into alienated new state owner Dajia is transfer of these multi-billion properties and obtaining them for free. Though illegal, they are income. The thieves-expropriators bears the liability to pay property title transfer transaction taxes.  Now, under the co-conspirator Defendant Matthew Belger's willful misrepresentation and fraudulent concealment, in aiding and abetting Defendant Travis Laster's abuse, such illegal acquisition of multibillion dollar properties was disguised as a simple announcement of unchanged-ownership entitlement.  Such a conspiracy to help acquiring involved multimillion dollar transaction tax fraud and tax evasion.  Acquiring the fruits of looting is an income, an income of multibillion dollars for the new owners who get for free.  Therefore, the new owner should and must disclose their illegal income and pay income tax.  At least, such a grand conspiracy have implicated an attempted criminal evasion of multimillion dollar tax frauds and Tax Evasion for transaction tax alone and multibillion dollar for income tax t against the United State, and several State treasuries.**

150.   Defendant Dajia's only additional function is provided a deep pocket of cash and foreign currency under the disguises of state owned enterprise for the corrupted communist ranking officers to freely steal, for personal benefits or for the payments of overseas espionage activities or international corruptive activities.    .

151.   Defendant Branch Committee of Chinese Communist Party (CCP) for Dajia Insurance Group Co, Ltd. ( hereinafter "DAJIA, AKA, NEO-AN BANG") is an integral part of Chinese Communist Party (CCP), the ruling bloc of the People's Republic of China (PRC) .  The Branch Committee of Chinese Communist Party for the DAJIA, AKA, NEO-AN BANG is totally controlling the daily operation of the Defendant DAJIA, AKA, NEO-AN BANG.

152.   One of the CCP's domestic and transnational criminal activities is its illegal expropriation of

private entities and private business entrepreneurs in violation of international law.  Defendant's DAJIA, AKA, NEO-AN BANG's main role in such criminal activities is to implement these illegal activities, which expropriates China's top one privately owned financial institution, namely, AnBang Insurance Group, Co. Ltd.

153.    On June 28, 2019, Defendant DAJIA, AKA, NEO-AN BANG declared its inauguration of the birth.  It was registered with its own trade name (Dajia), after it heard that the litigation with the U.S. Patent and Trademark Bureau had failed and its mark piracy was hard to continue.

154.    The expropriation process implemented by DAJIA, AKA, NEO-AN BANG has encircled all corporate property, wealth, assets, such as real properties, official buildings, fixtures and facilities, cash deposits under the company's financial reserve, all cash equivalent exchange instrument HDCs, vehicles, stationary, goodwill, trade marks which was originally stolen from Plaintiffs, without any compensation, or any plan to compensate the private owners.

155.    The expropriation process implemented by DAJIA, AKA, NEO-AN BANG while having encircled and taken all corporate property, wealth, assets, such as real properties, official buildings, fixtures and facilities, cash deposits under the company's financial reserve, all cash equivalent exchange instrument HDCs, vehicles, stationary, goodwill, trade marks which was originally stolen from Plaintiffs, without honoring the liability to inherit the company's contractual debts, neither did it have any dignity to return and compensate its predecessor's stolen intellectual property from the United States.

156.    During the domestic expropriation process, Defendant enthusiastically involved in litigations to evade its liability to return and compensate the stolen intellectual property, the AB trademark.

157.    During the domestic expropriation process, Defendant involved in persecuting these disobeyed, or contempt Private entrepreneurs as of Xiaohui Wu, by inflicting ruthless, lasting and lingering tortures with the hands of the prison wards and false imprisonment against victim Xiaohui Wu. litigations to evade its liability to return and compensate the stolen intellectual property, the AB trademark.

158.    Defendant DAJIA, AKA, NEO-AN BANG's expropriation of private properties did not stop at the border of the PRC, its illegal expropriation has expanded into the United States by abusing the State of Delaware court systems to continue its trade mark piracy and expropriating 20 ultra-expensive properties, which had been in the ownership of An Bang Defendant was illegally taking, and was converted into the ownership of the contractual parties of these Plaintiffs as the performance bond through 2017 DRAA Balnket Agreement, followed with Arbitration Proceedings, which Defendant DAJIA, AKA, NEO-AN BANG refused to inherit,

159.    Defendant DAJIA, AKA, NEO-AN BANG timely received the notice of DRAA arbitration by the arbitration board by signing the registered mail while declined to participate in the arbitration process.   Defendant's knowing forfeiture within the timeframe has resulted in the Arbitration board's properly rendering the arbitration awards (Exhibit 9) in default pursuant to Delaware Rapid Arbitration Act.

160.    Defendant DAJIA, AKA, NEO-AN BANG, acted in concert with its paid U.S, counsels, suspiciously using the means and ways of foreign corruptions of Chinese characteristics, has subversively overturned the normal procedures of the Delaware Chancery Court in obvious violations of Delaware local law, to lead to unauthorized, illegal and wrongful disposition of Plaintiff's private properties into the State Owned newly incorporated state owned enterprise, namely, Dajia Insurance Group Co, Ltd. (Dajia)which did not even have standing in these litigations.

161.    Defendant DAJIA, AKA, NEO-AN BANG, in the process of enhancing such CCP's illegal expropriation/nationalization programs to steal An Bang together with its trillion dollars assets, has caused the false imprisonment, tortures, stave labors against such disobedient private entrepreneurs as of Xiaohui Wu, and others, in corroborating with the Wards of the Baoshan Prison.   Defendant DAJIA, AKA, NEO-AN BANG may also suspiciously masterminded, conspired and implemented such lethal plot as assassinating, and murdering victim Xialu Chen, the vice chair of the Board and deputy general manager of An Bang, in enhancement of such vicious and illegal expropriations of An Bang.

162.    Defendant DAJIA, AKA, NEO-AN BANG may also have involved in such extraterritorial illegal and immoral practice to expand the PRC's persecution against rights-defending lawyers into the Court house of the State of Delaware by threatening and actually targeting the Plaintiffs' DE and California Defense counsels into bar council by threatening to rip off their livelihood.

163.    Defendant DAJIA, AKA, NEO-AN BANG suspiciously caused, through its American agents with apparent failure to have registered with the U.S. Department of Justice, to turn the Delaware Chancery Court into an enclave of the PRC's illegal expropriation tools, an integral part of Chinese Communist Party's overseas expansion of its undue influence in furtherance of its internationally condemned crime against humanity by suspiciously using VC Laster as the CCP's instrumentation in aiding and abetting its criminal project of illegal expropriation of private properties, and promoting  communist China's signature illegal practice in continuing intellectual property piracy in the United States by abusing the DE judicial systems in trampling Plaintiff's due process rights under the 5th and 14th Amendment.

164.    Though it may depends upon further investigation, through discovery or with the involvement of U.S. Federal agencies, Defendant DAJIA, AKA, NEO-AN BANG's practice in the United States, may have violated the following U.S. Federal Laws: Foreign Agents Registration Act to block its U.S. agents from registering with the USDOJ, Communist Control Act; Bribery of U.S. officials in violation of 18 USC 201, and **U.S. Taxation Law,** in addition to other violations.

**165.    During the period when An Bang was under the management of Mr. Xiaohui Wu, An Bang made timely payment of transaction taxes approximately US$70 millions transaction taxes covering those properties as of Wardoff Hotel and Marriot Hotels.**

166.    **After the Expropriation by Dajia under several other co-conspirators as its masters, such properties as Dajia's subsidiaries, Strategic Hotel and Resort LLC., AB Stable VIII LLC, have thus far failed to report and pay any penny of tax to U.S. government, apparently under the   as   An Bang properties in the United States, including all those hotels after changing hands from privately An Bang to state owned Dajia, apparently following suspiciously criminal advice from Defendant Matthew Belger, who helped the defendants to have fraudulently concealed multimillion dollar transaction tax and multibillion dollar income tax while helping illegal changing hands of 20 properties with the assistance of co-conspirator Travis Laster.   .**

167.    Defendant Dajia's principal place of the business is Suite 1202, 12th Fl. No. 6 Jian Guo Men Wai Street, Chaoyang District, Beijing, China.

**Defendant AB Stable VIII LLC.**

168.    The Name of this Defendant by itself reflects an image of a thief to steal Plaintiffs' intellectual property and trade name unsophisticatedly in the mirror of U.S. Trademark 5074065 issued and affirmed by the USPTO, as well as in the Mirror of the lawful proprietor's trade name "AB Stable Group LLC."

169.    Defendant AB Stable VIII LLC is a freshly incorporated Delaware shell corporation which proclaimed itself as one of the subsidiaries to the fake "Dajia Insurance Group Co. Ltd." according to its pleading document (Complaint) filed with Delaware Chancery Court under the Vice Chancellor Travis Laster, bearing case number 2020-0310-JTL.

170.    Therefore, this corporate Defendant is also the Beneficiary named by the Hon. VC Laster as the owner of the 18 U.S. Properties plus two Canadian properties under the permanently untouchable, un-claimable titles belonging to "Dajia" and its "subsidiaries".

171.    In jointly and severally promotion, implementation of such grand conspiracy of illegal nationalization and expropriation drive against all plaintiffs as a class led by the CCP Politburo, this

Defendant acted as the criminal expropriation group's extraterritorial arm and claw and it was organized and registered in the State of Delaware merely for the enforcement of such illegal/criminal agenda.

172.  Therefore, this defendant is simply one of the extraterritorial front runner of all the other Defendants, up to the Defendant CCP Politburo under Defendant Keqiang Li. It is therefore, in its nature, an foreign agent, in corroborating with other Defendant Foreign Agents in this case as the co-conspirators, jointly and severally serving a hostile foreign power to serve its foreign master's strategic agenda in the United States for illegal operation, having apparently failed to registered itself with the U.S. Department of Justice pursuant to U.S. Foreign Agents' Registration Act.

173.  The main functional service this AB Stable VIII LLC presumably offered to its foreign mater through its alleged "affiliation with fake "Dajia" is to illegal sell portion of Plaintiff's An Bang properties, 15 luxury hotels to MAPS, a South Korean owned private enterprise, apparently by distress sale price for quick cash in hotness, for US$5.8 Billion.  That lucrative transaction was also fallen into the hands of "Dajia's" co-conspirators in the United States, the duet of former master and former clerk Plaintiffs will discuss *in fra.*

174.  The other functions and roles are similar to Defendant "Dajia", with which, we have hard time to find their valid standing in An Bang and its legitimate private properties here and abroad.

175.  Though there is no public records regarding any CCP Party Branch or that of Branch Secretary for this Defendant, it is still an integral part of the Defendant CCP Politburo, the supreme master of AB Stable VIII.LLC. .

176.  Interestingly, address of the registered agent for this Defendant is 251 Little Falls Drive, Wilmington, DE 19808.

**Defendant CCP Branch for Baoshan Prison, the Superintendent thereof**

177.  The primary victim of CCP's illegal nationalization is Mr. Xiaohui Wu, the Chair of the An Bang's board and the CEO of An Bang. Xiaohui Wu was the legal representative of the original, privately owned real An Bang, rather than a fake and nationalized Neo An Bang, newly namely, Dajia, was incarcerated in Baoshan Prison, where he has been subject to ceaseless and ruthless tortures and slave labor under coercion.

178.  In furtherance of the CCP mobilized illegal expropriation of such private enterprise as of An Bang and to deter the other private entrepreneurs in this instant case, Defendant CCP Branch for Baoshan Prison and its Superintendant has committed such anti-humanity crimes as of constant and ruthless tortures, degrading and other inhuman treatment such as starving and sleep deprivation,

coercion to feed unknown medicines to harm health and to endanger the inmates' lives, and slave labor, in active concert with its master the Politburo of the Chinese Communist Party.

179.    The personal liability of the super-intendant and his subordinating wards in commission such a conscience shocking crimes against humanity rendering such victim as Xiaohui Wu shall be in no circumstances be waived.

180.    Defendant Baoshan Prison is situated at 6178 Hutai Road, Luodian Tsp. Baoshan District, Shanghai, China.

**Defendant Travis Laster (in his personal capacity in grand conspiracy for Tax Frauds)**

181.    The Honorable Defendant Travis Laster, is the Vice Chancellor of the Delaware State Chancery Court. Defendant VC Laster is not an ethnically Chinese, while highly likely, he may not be a member of the Chinese Communist Party. Under normal circumstances, Plaintiffs would not implead or implicate him in this epoch making landmark case in the fight between a group of victims as of a class under the corrupted CCP criminal organization's expropriation and the extraterritorial claws of the CCP criminal expropriators, because Plaintiff would show their full respect to his judgeship, and his qualified immunity, but for his wanton negligence by allowing himself to be part of an instrumentation of the CCP's extraterritorial illegal expropriation and intellectual property stealing against the citizens and entities of the United States.

182.    As an experienced vice chancellor, Defendant Travis Laster knew or should have known that Dajia, as the CCP's state owned novel enterprise as an integral part of the Chinese Communist Party, a hostile foreign power house of the evil, by using its stolen trade name as of Anbang Insurance Group Co, Ltd. (An Bang), has *no standing* representing that deprived and demised old An Bang to challenge the legitimacy of the legal titles under the 6 Arbitration Awards rendered under the DRAA accordingly, based upon the 2017 DRAA Blanket Agreement whose authenticity has never been challenged, even with the party's own witnesses, among other deficiencies.

183.    As an experienced, impartial, if any impartiality, vice chancellor, Defendant Travis Laster knew or should have known that Dajia, as the CCP's state owned novel enterprise as an integral part of the Chinese Communist Party, a hostile foreign power house of the evil, by using its stolen trade name as of Anbang Insurance Group Co, Ltd. (An Bang), has *no property rights to claim any title of the 20 listed U.S. properties under the legitimate ownership of the private owners of An Bang, who were illegally expropriated, tortured and even murdered in the CCP Kleptocrats nationalization campaign in violation of international law.*

184.    As an experienced, impartial, if any impartiality, vice chancellor, Defendant Travis Laster knew or should have known that Dajia, as the CCP's state owned novel enterprise as an integral part of

the Chinese Communist Party, a hostile foreign power house of the evil, by using its stolen trade name as of Anbang Insurance Group Co, Ltd. (An Bang), has *no legal claim on whatever it expropriated or robbed from private sectors by state organized violence, including the intellectual properties stolen from the U.S. entities.* No speculation, junctures, or willful misrepresentation in form of intrinsic frauds upon the Court, neither any provisions of the DRAA law, may have empowered him to make such a brazen ruling leading to a fraud and crime in nature disposition of the 20 U.S. properties to an illegitimate entity, namely Dajia, an integral part of the Chinese Communist Party, given to his knowledge that the disposition of those had been made in the 2017 DRAA Agreement to the victims and potential victims of the CCP's illegal expropriation.

185.     The most he can arguably help the illegal Dajia represented by his former clerk Mathew Belger, Esq., was to enter a default judgment to deny the petition for confirmation.  If he wants to go a further step, he might exercise his judicial discretion to set up a resulting trust, rather than allow himself to become an accomplice of a lethally hostile communist foreign power to have their expropriated loots to be legitimized by his brazen abuse of his judicial power.

186.     Defendant Laster has not only gone too many extra miles to rule that the U.S. properties with approximately market value of 90 Billion dollars belonged to CCP under the name of "Dajia", but also creatively attempted to make his ruling an universal ban to chase any lawful claimants to even raise challenges and objections.  Such apparently overzealous judicial activism demonstrated his wanton negligence, to say the least, hence taking away his immunity under the Delaware State and Municipal immunity Act.

187.     Knowing this is a DRAA rapid arbitration case with the chancery court's extremely limited jurisdiction, knowing this case involved the struggles between the legitimate owners of the private properties and the Communist party's illegal expropriators under the on-going Chinese communist Party Politburo's illegal expropriation drive, Defendant Travis Laster, the presiding Vice Chancellor of the Delaware Chancery Court, entered a "default judgment" under the urge of Mr. Matthew Belger, "Dajia's" legal counsel, the former clerk of the VC Laster,  on July 2, 2020.  For the relevant part, the 07/02/2020 "Default Judgment" ruled: "The petitioners, and those acting in concert with them, …, managers, attorneys affiliates, and any other persons in active concert or participation with the petitioners) are permanently enjoined from:

a.Representing that the petitioners obtained a judgment from this Court in connection with this action; b. making any further filings *in any court* relating to any purported judgment obtained from this Court in connection with this action; c. representing to any court or person that as a result of this action or any filings made in this action, the petitioners hold title to, or have any real property interest in, any of *the properties owned by Dajia or its subsidiaries*, including but

not limited to: (followed is a long list of the 18 properties, plus a catch-all clause: xix: Any properties owned by Retirement Concepts, Canada or its subsidiaries." Emphasis added. Exhibit 6

188.    VC Laster's Order to stop the globe from rotating was so powerful and sweeping, that this globe for the small portion of Delaware has actually stopped rotating by freezing.  For more than 3 months and more, DE attorneys through out the State, regardless brazen ones or over-cautious characters, old and young, academic types or pragmatic personality, all have flatly declined Plaintiffs' invitation for representing the Plaintiffs, after they had chance reading the following scary ordinance:

"The Respondents shall provide a copy of the Motion to enter Final Judgment and Dismiss this This Action With Prejudice, including its supporting documents, to the Office of Disciplinary Counsel (ODC) so that ODC may review the conduct of the Delaware attorneys who acted on behalf of the petitioner in this proceeding, determine whether any violations of the Rules of Professional Conduct have occurred, and evaluate whether any disciplinary action is warranted.  The Respondent shall also bring to ODC's attention the conduct of Steven Nielsen, a California attorney, in making a filing with the Delaware Court of Common Pleas…"   Exhibit 6

189.    Questions arises as to who told VC Laster that these 18 enumerated ultra-valuable U.S. properties plus Canadian properties under the title of once the privately owned "An Bang" are "*the properties owned by Dajia or its subsidiaries*", a state owned entity as an integral part of the Chinese Communist Party Politburo even before its in-China, domestically driven illegal expropriation process was not even completed and finalized. ***Does this experienced judicial officer really believe that his changing of few words in ink can conceal under the court seal the clear cut fact of changing hands of these multibillion dollar properties? To receive these multibillion dollar worth of the US and Canadian properties from their lawful private owners to its illegal criminal CCP expropriators, are 100% pure income to the latter. Therefore, these illegal expropriators have the legal obligation to disclose such income to U.S. Tax authorities and report income tax by billions. What is the legal consequences for Defendant Laster to help enhance such an illegal tax evasion or attempted tax evasion by throwing his inks? His conspiracy in helping such skyrocketed tax evasion and tax frauds are not immuned from DE State/Municipal Immunity Act. No wonder this judicial officer behaved so oddly having attempted to bar any legal counsel through out the world to getting close to his sealed judicial basement by threatening to rip off the livelihood of any challengers.***

190.    The completion of such unlawful expropriation from private into the CCP Party's was officially finalized on July 7, 2020, a week after the VC Laster's ahead of time accomplice in aiding and abetting the communist expropriation inside China! Then, who told the VC Laster that Defendant neo-An Bang, aka, Dajia, or its communist expropriators had any  *or lawful nexus to a privately*

*owned company and privately owned properties* even to appear before any U.S. Courts to challenge the lawful titles to those private owners, when Article 79 of the DRAA Blanket Agreement had clearly transfer the title of all these properties, equalizing only one fortieth treble damages of the Plaintiffs' intellectual property set forth as the performance bond paid to the Plaintiffs here.

191.    Neither Article 88 of the DRAA Blanket Agreement, nor DRAA Rule of any provisions, gave the empowerment of  this VC Laster to make any disposition of these privately owned properties in helping moving from the lawfully designated private transferees to Chinese Communist Party Politburo as the illegal expropriator.

192.    Judge Laster's unethical, highly suspicious judicial activism for unknown reasons in unauthorized disposition of properties under DRAA Blanket Agreement implemented by DRAA Arbitration Awards rendered pursuant to Article 79 and Article 88, was wanton, rather than ordinary, negligence in malice to furtherance in aiding and abetting communist China's extraterritorial expansion and penetration of on-going illegal expropriation of private property, not only illegally taking plaintiffs' tangible property, but also such intangible properties as the subject matter of the specified liquidated damages paying to Plaintiffs for a decade long trade mark piracy practices. Defendant VC Laster's outrageous misconducts for violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 818 (1982) is not simply an abuse of judicial discretion. He voluntarily allow himself, with or without taking bribery alike, to be instrumentation of the CCP's exterritorial evil practice penetrating into the USA.  Vice Chancellor's such "Wanton negligence" in recklessness aiding and abetting totalitarian China's anti-humanity crimes is not shield by the Delaware Municipal Government's Immunity Act pursuant to the exception clause under 10 Del C. 4011 ( c )

193.    The consequences of Defendant VC Laster is severe. But for the VC Laster's unauthorized, baseless, and abusive activist type of accomplice to aiding and abetting Chinese Communist Party's anti-humanity crimes in violation law of nations and of jus cogens, no conspiracy of the PRC's extraterritorial illegal action of expropriation would be accomplished here on this land.

194.    Additionally, Defendant Travis Laster has maliciously interfere the contractual relations between the contracting parties of the 2017 DRAA Blanket Agreement in improper suppression of the autonomy of contract.

195.    **Defendant Laster, as an experienced judicial officer, knew or should have known, that Expropriation of privately owned An Bang's twenty (20) ultra-valuable U.S. properties into the illegal expropriators' hands are not ordinary corporate merge or corporate reorganization. As to these twenty real properties, *changing hands from An Bang to Dajia*, from private**

citizens' ownership into alienated state owned new property owner Dajia *is changing hands of these multi-billion properties*. Fruits from such illegal changing hands must be disclosed to the U.S. and State government for paying taxes, both transaction taxes and income taxes. The recipients must disclose their gain, regardless legally or illegally,  and pay transaction taxes, and *income taxes*.   The thieves-expropriators bear the liability to pay property title transfer transaction taxes, as well as income taxes.

196.    **Now, under the co-conspirator Defendant Matthew Belger's willful misrepresentation and fraudulent concealment, in aiding and abetting Defendant Travis Laster's abuse, such illegal income through changing hands of multibillion dollar properties was disguised as a simple announcement of unchanged-ownership entitlement.   Such a conspiracy of tax frauds may have involved in grand conspiracy of multimillion dollar transaction tax fraud and billion dollar income tax frauds with allegedly assistance from Defendant Laster to help Dajia and Dajia's foreign communist masters to criminally evade tax. At least, such a grand conspiracy have committed an attempted criminal evasion of multimillion dollar tax frauds and Tax Evasion for transaction tax and multi-billion for income tax evasion against the United State, and several State treasuries.**

197.    Under the circumstances, being an exception, Defendant Laster must be held personally accountable for the offenses as stated above.

**Defendant Matthew Belger**

198.    Defendant Matthew Belger is the lead counsel for Neo-An Bang, aka, Dajia.

199.    Defendant Belger was the former clerk to Defendant VC Laster of the Chancery Court.Exhibit 9

200.    Though the State of Delaware did not bar such an intimate relationship to cause clouds of doubt on presiding Judge's impartiality while facing his former servant  as the defense counsel in an adversarial  proceedings, the best way for public confidence in the unbiased court will be the the Judge should have voluntarily recuse himself from doing justice between business partners, while the former master was presumably working for unbiased justice and his former servant was working for cash paid by Chinese Communist expropriators.  For the decency of justice, the presiding VC's steep ruling being drafted by his former clerk demonstrated too much family atmosphere.

201.    Defendant knew or should have known he was litigating a summary proceedings of the DRAA matters. Nevertheless, he has successfully misled his former boss while he had turned the summary confirmation proceedings into a civil hearings deciding the disposition of the property ownership, while the DRAA did not authorize the Chancery Court to second guess who has the ownership of

what.

202.   Mr. Belger, by utterly willful misrepresentation to the Court, had popped up a fake issues of so-called "frauds" and possible "crime", which was completely nonsensical and outrageous, yet his scary tactic was so successful that he chased away all Petitioners' Delaware Counsels, keeping all Delaware counsels out of the Courthouse.  Records show that all the nonsensical garbage was thrown out to the Bench happened just in the oral arguments on whether Petitioners' counsel should be allowed to resign.  He has turned the Courthouse into a midnight market place between in-laws.

203.   The draft judgment that Mr. Belger drafted and presented to his former boss was full of unsophisticatedly smuggled manipulation by spoliation of evidence with no defense in place because the petitioners' counsels were trembling under the threats of losing license looming overhead for doing nothing wrong, except for being a little stupid, presumably bona fide stupidity in designing defense tactics coupled with either intentional or reckless misreading VC Laster's signed "Receipt" of the Petition dated October 1, 2019 (So what?).

204.   A disguised Default Judgment drafted by Defendant Belger was infected with plague of bad smelly staff ranging from unauthorized "permanent disposition" the multibillion dollars properties tortuously converted from their legally designated lawful owners in private ownership into Communist expropriator in criminal acts, to form a universal bar to prohibit with the threats of depriving livelihood targeting any potential helpers to the Petitioners.

205.   Defendant Belger knew or should have known that his clients are not ordinary business enterprise. He knew they were representing a foreign power, That Foreign power was illegally or criminally expropriating citizens of both United States and of China their lawful rights and legitimate interest, ranging from such tangible properties as 20 ultra-expensive buildings to such intangible Properties as intellectual property from their lawful owners. He knew or should have known that taking communist criminal expropriators' cash for fees or whatsoever, he may need to register himself to the Department of Justice as their agents, and his cash proceeds received from such illegitimate Dajia, whose freshly incorporation was just to serve an unlawful purpose to nationalize private enterprise, may need to go through clearance with both the U.S. Department of Treasury and the USDOJ.

206.   He knew or should have known that his representation to the Court, during the performance of the duet show, is false and fraudulent. Yet he did it without any hesitation of guilt. He went to many extra miles and led the entire Delaware Chancery court into deep ditch of disgrace.

207.   He know its fraudulent yet he procured the steep injustice by employing civil conspiracy between him and his former master in 500 North King Street, generously handing US$900billions

into the dirty bloody hands of the Chinese communist dictators whose inter-continental Blastic

Missiles at Mark VII speed with bearing ten nukes each are aiming at our country covering all the

landmass.  .

208.    To further chase away all counsels from approaching the Petitioners there, plaintiffs here,

Defendant Matthew Belger has not only drafted the draft so-called "Default Judgment" for his

former master, he also inserted such phrase that the Court demanded the Respondents to turn the

Petitioners' counsels from De to CA, into the Disciplinary Committee of the respective state bar.

After the co-defendant VC Laster affixed his signatures on the draft judgment, defendant Belger

immediately followed his own footprints to write and publicized the "grievance complaint"

tarnishing three counsels in both the State of Delaware and the State of California.

209.    Doing so, Defendant Belger has sealed his family backyard to block any trespassing by any

legal counsels coming to help the Petitioners, ever.

210.    **Defendant Belger, as an experienced Chancery Court's former clerk, knew or should have
known, that Expropriation of privately owned An Bang's twenty (20) ultra-valuable U.S.
properties into the illegal expropriators' hands are not ordinary corporate merge or
corporate reorganization.  As to these twenty real properties, *changing hands from An Bang to
Dajia*, from private citizens' ownership into alienated state owned new property owner Dajia
*is changing hands of these multi-billion properties*. Fruits from such illegal changing hands
must be disclosed to the U.S. and State government for paying taxes, both transaction taxes
and income taxes. The recipients must disclose their gain, regardless legally or illegally,  and
pay transaction taxes, and *income taxes*.   The thieves-expropriators bear the liability to pay
property title transfer transaction taxes, as well as income taxes.**

211.    **Now, under the co-conspirator Defendant Matthew Belger's willful misrepresentation and
fraudulent concealment, in aiding and abetting Defendant Travis Laster's abuse, such illegal
income through changing hands of multibillion dollar properties was disguised as a simple
announcement of unchanged-ownership entitlement.   Such a conspiracy of tax frauds may
have involved in grand conspiracy of multimillion dollar transaction tax fraud and multi-
billion dollar income tax frauds seeking a judicial seal from Defendant Laster.  To help Dajia
and Dajia's foreign communist masters to criminally evade tax may be a grand felony given
to such magnitude of skyrocketed amount. At least, such a grand conspiracy have committed
an attempted criminal evasion of multimillion dollar tax frauds and Tax Evasion for
transaction tax alone plus multi-billion for income tax evasion against the United State, and
several State treasuries.**

212.    Defendant Matthew Belger's principal place of business is 1313 N. Market Street, 6th Fl., Wilmington, DE 19801.

213.    Wherefore, in the foregoing light, Defendant Matthew Belger must be hel liable and accountable for such manger-lawyer type intrinsic upon the Court.  These Plaintiffs' will be encouraged to take ethical actions against such disgusting practices.

**JURISDICTION AND VENUE**

214.    Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 109 here of as it set forth fully and at length herein.

215.    This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction), 28 USC 1605 (a) (3) (4) (5) and (Expropriation of property in violation of law of nations) and 1605A(h) (2 ) as well as 28 USC 1605 (8), for enforcement purpose.

28 U.S.C. § 1350 (Alien Tort Claims Statute) and 28 U.S.C. § 1350 (Torture Victim Protection Act). The Alien Tort Statute provides federal jurisdiction for "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Torture Victim Protection Act supplements and confirms the ATS by providing federal court jurisdiction for acts of torture, as defined by 28 U.S.C. § 1350.

216.    This Court may exercise "original jurisdiction" over a foreign state "without regard to amount in controversy" in "nonjury civil action[s]" seeking "relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). As the plaintiffs have not demanded a jury trial, see Civil Cover Sheet at 2, ECF No. 1-1, and they seek in personam relief, see Compl. at 21, the remaining question is whether North Korea is entitled to immunity under the FSIA or another international agreement.

217.    28 U.S.C. § 1605A, which provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ," 28 U.S.C. § 1605A(a)(1). Subject matter jurisdiction under this terrorism exception may be exercised when the plaintiff establishes the following four elements: (1) "the foreign state was designated as a state sponsor of terrorism at the time [of] the act . . . or was so designated as a result of such act, and . . . remains so designated when the claim is filed," id. § 1605A(a)(2)(A)(i)(I); (2) "the claimant or the victim was, at the time [of] the act . . . a national of the United States," id. § 1605A(a)(2)(A)(ii); (3) "in a case in which the act occurred in the foreign

state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim," id. § 1605A(a)(2)(A)(iii); and (4) the plaintiff seeks monetary damages "for personal injury or death caused by 'torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act,' if 'engaged in by an official, employee, or agent' of a foreign country," Mohammadi, 782 F.3d at 14 (quoting 28 U.S.C. § 1605A(a)(1)).

218.    The Class of the Plaintiffs who are seeking damages under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq., against North Korea for its torture, hostage taking, and extrajudicial killing of Otto. 28 U.S.C. § 1608(e). "This provides foreign sovereigns a special protection akin to that assured the federal government by FED. R. CIV. P. 55(e)," which has been renumbered by the 2007 amendment to Rule 55(d). Jerez v. Republic of Cuba, 775 F.3d 419, 423 (D.C. Cir. 2014); see also H.R. REP. No. 94-1487, at 26 (1976) (stating that § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F.R. Civ. P."). While the "FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court,'" courts must be mindful that Congress enacted Section 1605A, FSIA's terrorism exception, and Section 1608(e) with the "aim[] to prevent state sponsors of terrorism—entities particularly unlikely to submit to this country's laws—from escaping liability for their sins." Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1047–48 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)). With this objective in mind, the D.C. Circuit has instructed that "courts have the authority—indeed, we think, the obligation—to 'adjust evidentiary requirements to . . . differing situations.'" Id. at 1048 (quoting Bundy v. Jackson, 641 F.2d 934, 951 (D.C. Cir. 1981)) (alteration adopted). Courts must draw their "findings of fact and conclusions of law from admissible testimony in accordance with the Federal Rules of Evidence." Id. at 1049 (quoting Daliberti v. Republic of Iraq, 146 F. Supp. 2d 19, 21 n.1 (D.D.C. 2001)). Uncontroverted factual allegations that are supported by admissible evidence are taken as true. Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) ("Courts may rely on uncontroverted factual allegations that are supported by affidavits." (citing Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 171 (D.D.C. 2010))); Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53, 63 (D.D.C. 2008), aff'd, 646 F.3d 1 (D.C. Cir. 2011) (quoting Estate of Botvin v. Islamic Republic of Iran, 510 F. Supp. 2d 101, 103 (D.D.C. 2007)); accord FED. R. CIV. P. 56(e)(2) (authorizing court to "consider the fact undisputed for purposes of the motion" when adverse party "fails to properly address another party's assertion of fact"). Section 1608(e), thus, "does not require a court to step into the shoes of the defaulting party and pursue every

possible evidentiary challenge." Owens v. Republic of Sudan, 864 F.3d 751, 785 (D.C. Cir. 2017).
"This is part of the risk a sovereign runs when it does not appear and alert the court to evidentiary
problems." Id. at 786. In a FSIA default proceeding, a district court can find that the evidence
presented is satisfactory "when the plaintiff shows 'her claim has some factual basis,'. . . even if
she might not have prevailed in a contested proceeding." Id. at 785 (citations omitted). "This lenient
standard is particularly appropriate for a FSIA terrorism case, for which firsthand evidence and
eyewitness testimony is difficult or impossible to obtain from an absent and likely hostile
sovereign." Id. Thus, courts are accorded "an unusual degree of discretion over evidentiary rulings
in a FSIA case against a defaulting state sponsor of terrorism." Id. This "broad discretion extends to
the admission of expert testimony, which, even in the ordinary case, 'does not constitute an abuse
of discretion merely because the factual bases for an expert's opinion are weak.'" Id. (quoting Joy v.
Bell Helicopter Textron, Inc., 999 F.2d 549, 567 (D.C. Cir. 1993)). Indeed, "[t]he testimony of
expert witnesses is of crucial importance in terrorism cases . . . because firsthand evidence of
terrorist activities is difficult, if not impossible, to obtain," "[v]ictims of terrorist attacks, if not dead,
are often incapacitated and unable to testify about their

219.    This Court also has supplemental jurisdiction over claims arising from violations of
state law because, pursuant to 28 U.S.C. § 1367, the facts in the claims arising from state law are so
related to the Plaintiffs' claims under federal laws that they form part of the same case or
controversy under Article III of the United States Constitution.

220.    This Court also has supplemental and personal jurisdiction over the defendants under the DC
    long arm jurisdiction statute pursuant to subsections  D.C. Code § 13-422 (2001) or that the court
    has personal jurisdiction pursuant to the District of Columbia long-arm statute, D.C. Code

221.    Other named and unnamed Defendants are similarly subject to the jurisdiction of this court by
    virtue of their corporate ties and/or business contacts and activities in this jurisdiction.

222.    Venue is proper in this judicial district pursuant to 28 USC 1391(d), in connection to 28 U.S.C.
    § 1350;

223.    Venue is also proper in this judicial district for all co-defendants in this instant case pursuant to
    28 USC 1391(b) and (c);

**Special Federal Question Jurisdiction Statement**

224.    Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 179
    here of as it set forth fully and at length herein.

225.    Under the Foreign Sovereign Immunities Act, a federal law enacted in 1976, foreign countries
    normally cannot be sued in U.S. courts unless one of only a few specific exceptions applies. One of

those exceptions, known as the "expropriation" exception according to Section 1605 (a) of the Act, applies to situations in which a foreign government has nationalized privately owned property. It allows lawsuits against foreign governments to go forward in the United States when *"rights in property taken in violation of international law are in issue"* and there is a commercial connection to the United States. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015) (Due to the fact that the jurisprudence is still developing, Plaintiffs would temporarily not citing the Supreme Court's Decision.)

226.    The Chinese Communist Party and its Politburo shall not be deemed as a sovereign state, consequently , it does not have the Foreign State Immunity.

227.    Due to the fact that Plaintiff have "produced compelling, admissible evidence" that totalitarian China illegally detained numerous members of those being expropriated, including Xiaohui Wu and "routinely tortures" its detainees such as Xiaohui Wu, Xu Ming, etc.  Kim, 774 F.3d at 1049, Section 1605 (h) is also applicable in this case.

228.    The landmark case is In September 2011, Helmerich & Payne International filed a lawsuit in the U.S. District Court for the District of Columbia. They alleged, among other things, that Venezuela and its oil company had *taken their property in violation of international law,* and that the FSIA's expropriation exception gave the court jurisdiction over the lawsuit. Venezuela and the company asked the district court to dismiss the case, arguing that the expropriation exception did not apply. The district court agreed with them on the claim by Helmerich & Payne de Venezuela, because the company is a national of Venezuela. But it denied the motion to dismiss with regard to Helmerich & Payne International's claim, on the ground that the seizure of property owned by Helmerich & Payne de Venezuela "effectively took its interest in" the company as a "going concern." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015) On appeal, the U.S. Court of Appeals for the D.C. Circuit ruled that both expropriation claims could go forward. Judge David Tatel wrote for the majority, in an opinion that was joined by Chief Judge Merrick Garland – President Barack Obama's nominee to fill the vacancy created by the death of Justice Antonin Scalia. To survive a motion to dismiss for lack of jurisdiction, the court of appeals explained, Helmerich & Payne's allegations only needed to meet what the court described as a non-frivolity criteria. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015)

229.    As a result, plaintiffs seeking to invoke the exception will need to plead facts and law at the start of the case sufficient to demonstrate that (i) there was a taking, (ii) the taking was in violation of international law, and (iii) "property or any property exchanged for such property is present in

the United States in connection with a commercial activity carried on in the United States by the foreign state." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015) *All three elements are fully involved in this instant case.*

230.   In this case, the example is the PRC's ICBC activities, which has involved both lawful and unlawful elements. Typically, to state a claim in federal court, regardless of whether the defendant is a sovereign or not, one need only satisfy Federal Rule of Civil Procedure 8, which sets a relatively low bar.

231.   The expropriation exception of the Foreign Sovereign Immunities Act of 1976 provides, in relevant part, that *"[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … in which rights in property taken in violation of international law are in issue."* 28 U.S.C. § 1605(a)(3). The questions presented are: 1. Whether the complaint in this case adequately pled a "tak[ing] in violation of international law," 28 U.S.C. § 1605(a)(3), by alleging that petitioners seized all of respondent Helmerich & Payne de Venezuela, C.A. ("H&P-V")'s oil rigs and productive assets without compensation based on discriminatory animus toward H&P-V's U.S. ownership. 2. Whether the complaint in this case adequately pled an injury to respondent Helmerich & Payne International Drilling Co. ("H&P-IDC")'s "rights in property," 28 U.S.C. § 1605(a)(3), by alleging that petitioners seized H&P-IDC's entire drilling business in Venezuela, including all the productive assets of H&P-IDC's wholly owned subsidiary. 3. Whether the court of appeals correctly applied this Court's decision in Bell v. Hood, 327 U.S. 678, 682- 683 (1946), to hold that a court lacks subject-matter jurisdiction over a claim under the FSIA's expropriation exception only when the claim is "wholly insubstantial and frivolous." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015)

232.   Due to the fact that this instant case involved aggravated, wildly misconducts as state organized terrorist type of expropriation against a targeted class of victims, involving tortures and probably wrongful deaths, false imprisonment, and such  illegality and misconducts of irregularity, for the purpose to implement expropriation, Section 1605 (h), as amended, is applicable;

233.   This class of the Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350, 13th Amendment and other related Amendments of the Constitution of the United States, UN International Convention against Torture and Other Cruel, Inhuman or Degrading Treatment (hereinafter referred to as "CAT") because their injuries resulted from violations of specific, universal, and obligatory standards of international law as embodied in a number of treaty obligations binding on the United States and

implemented Federal legislation.*  Defendants' conduct also violates the laws of the District of Columbia, including the State Constitution of the District of Columbia.

## RULE 23 CLASS ACTION ALLEGATIONS

234.   Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 190 here of as it set forth fully and at length herein.

235.   Plaintiffs brings this Class Action Expropriation, intellectual property piracy, and torture victims claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all victims under the CCP Politburo's nationwide drive of illegal nationalization scams.

236.   All said persons, including named Plaintiffs, natural or juridical, are referred to herein as the "Class."

237. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants.

238. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

## Numerosity

239. The proposed Class is so numerous that for the named shareholders alone, the total number are more than 50. Therefore, joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than fifty (50) members, for the shareholders alone, in the class.

## Commonality

240. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including: a. Whether the class of the Plaintiffs are the private owners? b. Whether Defendants are the State Actor? c.  Whether the taking of that trillion dollar financial institution from An Bang to Dajia are coercively taken without the consent of the original private owners? D. Whether such expropriation of a trillion dollar worth institution from its original owners had ever been given the adversely afffeted property owner a full fair and meaningful process? E. Whether any prompt, adequate and complete compensation were provided? Etc., etc. Defendants' CCP Politburo's nationwide policies and practices affected all Class members similarly, and Defendants unjustly beneffitted from the same type of unfair and/or wrongful acts as to each Class member.

Plaintiff and other Class members sustained similar losses though with varied degrees because the stake

holders' harms are varied, yet they injuries and damages are arising from the same unlawful policies, practices and procedures.

## Adequacy

241. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and international law, international human rights litigation cases.

## Superiority

242. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of massive number of victims under the gross violation of human rights settings, including gross violation of victims' life, liberty and properties involving both domestic and foreign powers as the actors in the litigation. Here, an individual Class members may lack the financial resources to vigorously prosecute a lawsuit against such giangantic defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are either large or small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

243. Upon information and belief, Defendants throughout the state violate the international law, the Constitution of the United States and such special law as othe law of the District of Columbia, land Delaware State Rapid Arbitration Act. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF FACTS

245.　Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through paragraph 199 here of as it set forth fully and at length herein.

***246.***　The Factual basis in this instant case has been briefly displayed in the brief introduction of thecase and of the parties and their respective roles in making of the factual basis of this case, subject to further discovery of evidence in support of this case. .

## CAUSES OF ACTION

247.　Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to 201 as though fully set forth herein:

248.　Plaintiffs' causes of action arise under and violate the following laws, agreements, conventions, resolutions, and treaties:

249.

( 1 ) Illegal Expropriation against all Plaintiffs by all defendants, including Defendants aiding and abetting the principal Defendants to further its expropriation against the lawful private owners by helping taking such privately owned properties back to the Defendants CCP politburo  ;

251

(2) Trade Mark Piracy to claim for compensation, (By such class member plaintiffs as An Bang's Co-Founder Andy Bang, Plaintiff world Award Foundation Inc.,  and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence, against all defendants except Defendant Laster)

Trade Mark Piracy to claim for compensation, claiming for liquidated damages set forth in Article 79 of 2017 DRAA Blanket Agreement:  This cause of action regards undisputed, and adjudicated infringement of  "Anbang (AB)" trade mark 4274061, whose infringement and compensation was set forth in the DRAA Blanket Agreement by all Plaintiff against all Defendants including Defendants aiding and abetting the principal Defendants to evade its liability to enforce the DRAA Agreement by the U.S. collateral by furthering  its expropriation against the lawful private owners by helping taking such privately owned properties back to the Defendants CCP politburo

252

(3) Breach of Contracts: (By such class member plaintiffs as An Bang's Co-Founder Andy Bang, Plaintiff world Award Foundation Inc.,  and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence, against all defendants except Defendant Laster)

253. The CCP mobilized illegal expropriation of An Bang has violently and illegally taken away its shareholders' lawful interests and expectation in the An Bang, the silence odf the Expropriators' in denying the company's private owenersrights under the contract, including rights under the 2017 DRAA Blanket Agreement has breached all written and implied contracts between the private entrepreneurs and the Company's new owner: The CCP Politburo. Furthermore, 2017 DRAA Agreement has provided liquidated damages to compensate the Plaintiffs for trade mark piracy for more than decade, among other violations.  To deny to pay these liquidated damages to the Plaintiff constitute of breach of contract.

254

(4) Unjust Enrichment. By All Plaintiffs against all Defendants Except for Defendant Travis Laster Illegal Expropriation in violation of international law by nationalizing the Plaintiffs privately owned entity and taking away plaintiffs jointly entitled property without due process, neither with a prompt, adequate and complete compensation have made the Defendants unjustly enriched.  Defendants must immediately disgorge what they unjustly devoured and robbed back to the Plaintiffs.

At this moment, Plaintiffs have no evidence to prove that Defendant Travis Laster has any shares from what the Defendants jointly or severally enriched proceeds wise, including the benefits and profits from the 30 pieces of the ultra-valuable properties, which should have been transferred to the Plaintiffs according to Article 79 of the DRAA Blanket Agreeemnt, followed with the DRAA Arbitration Awards.

255

(5) Tortuous Interference on Contractual Relations, by all Plaintiffs against Defendant CCP Politburo Laster

Without evidentiary show or factual basis, without investigation into any rebuttal evidence, Defendant Travis Laster either intentionally or recklessly declared that what Plaintiffs entitled 20 U.S. Properties belong to Dajia, a wrongful party representing illegal expropriation.  Though it is none of his business, Defendant Laster ruled that all parties are permanently enjoined from raising any claims against such "Dajia" properties, and threatening any counsels through out the United States with looming deprivation of their livelihood should they dare to represent the Plaintiffs to raise the claims.

Defendant Laster knew or should have known that the 2017 DRAA Agreement has assigned and convert these 20 properties as the performance bonds as portion of the liquidated damages payable to Plaintiffs, yet he determined to intervene such validly entered contract between the parties. Defendant Laster must be held personally liable and accountable for any harms, losses and  damages should irreparable harms occurs.

The Defendant CCP Politburo shall also be held jointly and severally liable because its advocacy has misled the Defendant Laster to have made such a wrongful interferences.

256

(6) Torture Victim Protection Act, 28 U.S.C. § 1350, by unnamed class members, including Xiaohui Wu and Xiaolu Chen, against all Chinese Defendants, excluding Defendant Laster.

Both class members were key managerial personnel before the expropriation.  ;

In furtherance of such illegal expropriation, Defendants  jointly and severally  caused the class members such as Xiaohui Wu and Xiaolu Chen being ruthlessly tortured, Class member Xiaolu Chen's mysterious death may be suspiciously and allegedly an extrajudicial killing as the collateral damage of such illegal expropriation. Consequently, Defendants wrongful acts triggers the application of Torture Victim Protection Act, 28 U.S.C. § 1350,

257:

(7) Against all Defendants, except Defendant Travis Laster, for their violation of International Covenant on Prevention and Punishment against Crimes of Tortures*  by class member Xiaohui Chen and Xiaolu Chen and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence;

210. The UN Torture Convention is not self-executing, Plaintiffs, as a class may invoke it praying this Honorable Court for injunctive and/or declaratory relief to order the CCP authorities to to be enjoined from continuing practicing tortures by releasing  Mr. Xiaohui Wu;

258. (8) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor **USC 1605A(h )2)** (1930), *adopted* June 28, 1930, 39 U.N.T.S. 55 (*entered into force* May 1, 1932) against All Defendants except Defendant Laster for by class member Xiaohui Chen and Xiaolu Chen and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence.

259:

(9)False Imprisonment started with state organized terrorist attacks and hostage taking in violation 28

 (By such class member plaintiffs as Xiaohui Wu and Xiaolu Chen and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence, against all defendants except Defendant Laster)

_____

*The United States ratified CAT, subject to certain declarations, reservations, and understandings, including that the treaty was not self-executing and required implementing legislation to be enforced by the U.S. Courts as Federal Penal Code Chapter 113C.

260:

(10) **Pains and Sufferings**

(By such class member plaintiffs as Xiaohui Wu and Xiaolu Chen and all adversely affected class members/victims in relation to this illegal expropriation drive by state organized violence, against all defendants except Defendant Laster)

261: For all other federal law cause of action, they are not self-executing.

(11) **Civil Conspiracy**

262. The conspiracy between defendant Belger and his former boss, between Mr. Belger and his current boss the Chinese Communist Expropriators, are textbook civil conspiracy, an actionable tort in the District of Columbia, assuming arguendo, not a criminal in nature.

263. Defendant Belger knew that his draft judgment was full of frauds and illegality, yet he present it to the VC for quick and easy win in the absence of any defense.

**264. Defendant Travis Laster knew and should have known that his former clerk was playing the games with the court from the very beginning through to the end to serve the illegal agenda of his very unusual client: Chinese Communist expropriators and killers, yet he allowed himself as the instrumentation to serve such strategic agenda of the hostile foreign power. This Defendant should have known that Declaring the skyrocketedly valued Property Ownership to Dajia, a shell corporation of illegal state ownership under the total possession and control of Chinese Communist Party's Politburo in help the latter's illegal/criminal expropriation project, is not within the scope of his empowerment, it iwas totally none of his business under normal circumstance.  Yet he did.**

**265: All threesome, should be held accountable for civil conspiracy in aiding and abetting Chinese communist expropriators' illegal nationalization in violation of both international law and U.S. Federal and State law, such as DRAA.    .**

**266. All Defendants jointly and severally committed civil conspiracy for their  malicious interference of business contract, namely, 2017 DRAA Blanket Agreement, and their respective role in the overt acts to conceal, or lead/mislead the Defendant Judicial officer Defendant to conceal that CCP expropriators' Defendants unlawful obtaining of 20 ultra-valuable worth of multibillion dollars ranging from 50 to 90 billion US dollars are these illegal/criminal CCP expropriators/thieves' 100% income for free. Each dollar is taxable income.**

**267. Such a civil/criminal conspiracy initiated by Dajia and his CCP politburo masters, ended up with Defendant VC Laster's sealing to help such Tax frauds at the cost of the named Plaintiffs, all defendants, except for Defendant Baoshan Prison, must be reasonably held accountable and**

**liable for such unsophisticated civil, probably criminal in nature, grand conspiracy.  Defendant VC Laster's changing words with a few drops of ink cannot conceal the facts of changing hands of these properties from their legitimate private owner into dirty blood hands of Chinese communist expropriators.**

**ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA**

268: Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to paragraph 296 as though fully set forth herein:

269: These claims are not precluded by the need or failure to exhaust local remedies as set out in the Section 1605 since all Plaintiffs have made every effort to seek local remedies in China, and their efforts have proven pointless and futile.

270. Any further efforts to obtain relief in China could well result in serious reprisals against those making allegations of wrongdoing on the part of high level officials in the PRC, as well as against the local attorneys representing the complainants. High level officials of the PRC are involved in the abuses alleged in this complaint and in the ratification of these abuses. Taking into consideration that the PRC government used the courts of China to secure Plaintiffs' being expropriated, using a highly controlled judicial process to do so, and taking into account the PRC government's refusal and/or inability to properly and effectively investigate acts of illegal expropriation under the threats of torture, cruel, inhuman or degrading treatment or punishment, and arbitrary arrest and prolonged detention and bring the perpetrators to justice, and given further other substantial indicators of governmental acquiescence in the violations of international law and its unwillingness to support legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs as the class, efforts to secure remedies for them in the PRC, including lawsuits in Chinese courts, must be considered futile.

271. For these reasons, requirements for further exhaustion of efforts to obtain local relief should be considered waived and satisfied.

272. In summary, all named Plaintiffs who were named as the signatories to the 2017 DRAA Blanket Agreement, are the prevailing parties to An Bang Trademark disputes being initiated by Defendant An Bang who had also invoked and cited the 2017 DRAA Blanket Agreement's penalty clause, and failed.

273.  All named Plaintiffs who were named as the signatories to the 2017 DRAA Blanket Agreement, are the prevailing parties to fair, open, legitimate arbitration proceedings being held in strict accordance to Article 88 of the 2017 DRAA Blanket Agreement following the DRAA provisions.

274. Defendant An Bang, as the Party A in that Agreement, whose top officer Mr, Xaofeng He signed the receipt of the Arbitration notice together with relevant Arbitration material seven (7) month before the arbitration proceedings, and having decided for intentional and purposeful default.  Therefore, they

have no procedural and evidence basis to argue that their voluntary forfeiture could be weighty enough to veto these six Arbitration Awards, *nunc pro tunc.*.

**STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)**

275. Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to 239 as though fully set forth herein:

276. Due to the unique circumstances of this case, specifically the fact that a substantial amount of the information is unavailable without the Defendants' cooperation, all the factual allegations are made because they "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," pursuant to Rule 11(b)(3). Fed. R. Civ. P. 11(b)(3)

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray for judgment against all Defendants jointly or severally as follows:

**As to All Named Plaintiffs:**

1. Compensatory Damages set forth in Article 79 of the 2019 DRAA Blanket Agreement, i.e, US$90 billion, plus 7% interests starting from July 18, 2017 as what the Agreement provided for liquidated damages in compensation to intellectual property piracy for more than 15 years, to all these Plaintiffs who are named in the 2017 DRAA Blanket Agreement.  This amount shall be jointly or severally be paid by all defendants from China, including, but not limited to Dajia, and AB Stable VIII, LLC;

2. Compensatory Damages of US$846 Billions (represents DRAA Arbitration Awards total Awarded damage $936Billion minus $90billion set forth in DRAA Agreement Art. 79), as set forth in DRAA Arbitration Awards I,II,II rendered from October 24, 2019 through November 8, 2019, payable to all Class members *pro rata*, to compensate their damages in loss of life, liberty and property during the Defendants' on-going expropriation period, or damages being awarded in all six plus one Arbitration Awards;

3. Punitive damages $2.5Million Against Defendant Travis Laster, **for his malicious interference of business contract, namely, 2017 DRAA Blanket Agreement, and his role in civil conspiracy helping, attempted to help grand tax frauds and tax evasion likely involving felony proceeds of multibillion dollars regarding Defendant Communist expropriators' mere income from 20 U.S. properties from assisted changing hands for free from their lawful private owners into the dirty bloody hands of Chinese communist expropriators**;

4. US$9 millions for civil conspiracy against Defendant Matthew Belger and his co-conspirators jointly and severally **for their malicious interference of business contract, namely, 2017 DRAA**

**Blanket Agreement, and his role in civil conspiracy helping,  or attempted to help grand tax frauds and tax evasion likely involving felony proceeds of multibillion dollars regarding Defendant Communist expropriators' mere income from 20 U.S. properties from assisted changing hands for free from their lawful private owners into the dirty bloody hands of Chinese communist expropriators**;

5.  Such injunctive Reliefs as:

6.  Order the Defendants to return An Bang back to its original shareholders as to all members of the Class;

7.  Immediately release Mr. Xiaohui Wu, from wrongful imprisonment;

8.  Specific Performance to order the Defendants to convert the titles of the 20 U.S. Properties in the name of An Bang to the named Plaintiffs according to the Article 79 of the Agreement. The Market value of these properties shall be deducted from the monetary damages;

9.   Declaratory Relief:

To Declare that Expropriation of An Bang is illegal and it should be reinstated as a privately owned enterprise.

  Incidental Damages:  For costs of the litigation, including, attorneys' fees; and

For such other relief as the Court deems just and proper.

**<u>Trial of facts by jury is respectfully prayed.</u>**

Plaintiffs respectfully that all facts of this case be tired by the Jury.

Respectfully submitted this by.


/s/Ning Ye, Esq.
Attorney at Law
Counsel for the Plaintiffs
135-11 38th Avenue, #1A
Flushing, NY 11354
Tel.:718-308-6626
Fax: 718-228-5816
Email: ynyale@aol.com
Dated: October 29, 2020

Verification Statement

I, Yan Zhao, a competent person of majority age, a legal resident of the District of Columbia, currently residing at 2036 Fort Davis Street, SE, Apt. A, Washington, DC 20020, and fully authorized to represent all named plaintiff corporations, under the witness of Mr. Andy Bang,  the co-founder of Anbang Insurance Group Co. Ltd., and signatory to 2017 DRAA Blanket Agreement, hereby certify that I have retained and authorized Ning Ye, Esq., an attorney at law of good standing of New York State as well as the bar member to this Honorable U.S. District Court of District of Columbia, to represent us the Plaintiff as a class to bring this class action.  All the allegations set forth in the Complaint is true and accurate to the best of my knowledge and belief.


_____

/s/Yan Zhao, Plaintiff