UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YAN ZHAO et al.,

    *Plaintiffs*,

v.

KEQIANG LI et al.,

    *Defendants*.

Civil Action No. 20-3138 (TJK)

## MEMORANDUM OPINION

This suit is the latest attempt by a group of corporate entities and an investor, Yan Zhao, to secure ownership and control over a group of luxury hotels. They claim that the properties, now indirectly owned by Defendant AB Stable VIII LLC, were the target of a plot by the Chinese government to illegally expropriate their wealth. They sue AB Stable VIII LLC, various Chinese political officials and entities, and a judge and opposing counsel from their previous litigation in the Delaware Court of Chancery. They bring a constellation of purported claims, including for "Trade Mark Piracy to claim for compensation," "Illegal Expropriation," violation of various international agreements against torture, breach of contract, unjust enrichment, tortious interference, "pain and suffering," civil conspiracy, and false imprisonment. Pending before the Court are motions to dismiss for, among other things, lack of personal jurisdiction filed by AB Stable VIII LLC, Judge Travis Laster, and attorney Matthew Belger. For the reasons explained below, the Court will grant their motions and dismiss the claims against them.

I.  Background

   A   Plaintiffs' Complaint

Plaintiffs seek, among other things, ownership of or compensation for a group of luxury hotels, including the Four Seasons Hotel in Washington, D.C.  ECF No. 1 ("Compl.") ¶ 30.  They allege a wild tale as to how a dispute over these properties arose.  They say that "An Bang Insurance Group Company, Limited" ("Plaintiff An Bang") was founded in 2002 by Andy Bang and Xiaolu Chen. *Id*. ¶ 5.  About a year later, Bang and Chen invited Xiaohu Wu, a relative of former Chinese leader Deng Xiaoping, to join their team.  Plaintiffs allege the company grew to be worth nearly half a trillion dollars before Wu was arrested in late 2017 and convicted in a "set-up" that led to an 18-year prison sentence. *Id*. ¶¶ 5 & 7.  Plaintiffs allege that then, Plaintiff An Bang was "illegally taken, confiscated, expropriated and illegally nationalized" into the newly incorporated, state-owned "Dajia Insurance Group Co. Ltd." *Id.* ¶¶ 8 & 10.  The Complaint identifies Defendants Shuqing Guo, "the CCP [First] Secretary for the Party Branch of the CBIRC," and Keqiang Li, "the Standing Committee member of the Politburo of the Chinese Communist Party's national central committee," as leaders in this "illegal expropriation." *Id.* ¶ 11.

Anticipating this seizure, the purported co-founders of Plaintiff An Bang assert they planned to transfer assets away from the Chinese government's control through foreign investment.  Compl. ¶ 14.  Accordingly, they allegedly purchased twenty luxury properties in the United States. *Id.*  And they claim to have executed an agreement on May 15, 2017 under the Delaware Rapid Arbitration Act, ("the DRAA Agreement") between "AnBang Insurance Group Co. Ltd.," "Beijing Dahuabang Investment Group Co. Ltd.," "World Award Foundation, USA," Plaintiff An Bang, "Amer Group Inc. USA," and "Ame Group Inc. USA" through which the

hotels would be transferred to Andy Bang and his U.S. incorporated companies.[1]  ECF No. 1-10 at 20.  They further claim that on July 21, 2019, under the DRAA Agreement, a panel of arbitrators rendered six arbitration awards ("DRAA Agreement awards") transferring the assets to Andy Bang.  Compl. ¶ 35.

But, Plaintiffs say, when they sought to obtain judgments based on those awards in Delaware Superior Court, Judge Laster and Belger, an attorney for their opponents, conspired with the Chinese government to deny them those judgments and expropriate their wealth.  Compl. ¶¶ 51, 52, 56.  And Plaintiffs allege that their efforts to prevent the nationalization of their assets "attracted stormy retaliation, causing fatality and harms in false imprisonment, incommunicado detentions plagued with ruthless, life threatening tortures."  *Id.*  ¶ 17.  They even allege that Wu and Chen may have been killed or tortured as part of this conspiracy.  *Id.* ¶ 20 (stating that "Andy Bang's such business corroborators as Xiaohui Wu, Xiaolu Chen, were driven to be demised"); *Id.* ¶ 23 ("Xiaohui Wu has already lost his human shape due to Chinese communist prison wards infamously spreading habitual practice of inhumane, ruthless tortures."); *Id.* ¶ 25 ("Xiaolu Chen was found dead in sudden death with unknown course . . . .").

B.   **Representations in the Motions to Dismiss**

While it plays no role in the Court's resolution of the instant motions to dismiss, the Court notes for the sake of completeness that AB Stable VIII LLC ("AB Stable VIII"), asserts that it, and not Plaintiffs, owns the properties at issue, at least indirectly.  It denies that it ever entered into the DRAA Agreement.  And it claims that the DRAA Agreement and the arbitration awards issued under it are part of a broader fraud scheme perpetuated by Plaintiffs, marked by

---

[1] The Complaint does not clarify the relationship of the other DRAA parties to each other or to the properties at issue.

their recording false grant deeds against its hotels, purporting to transfer them to Delaware shell companies strategically named to suggest association with AB Stable VIII and its affiliates. ECF No. 20 at 6. Then, AB Stable VIII claims, Plaintiffs "created arbitration awards based on a fictitious arbitration agreement in their attempts to lay claim to hundreds of billions of dollars of . . . assets." ECF No. 20 at 1.

AB Stable VIII, Judge Laster, and Belger also collectively provide an account of the litigation in Delaware, backed by publicly available court documents and opinions. They say that Plaintiffs in this case (except for Zhao), as petitioners, brought suit in the Delaware Court of Chancery on August 9, 2019, claiming for some reason that a dispute under the DRAA Agreement required arbitration. *World Award Found. v. Anbang Ins. Gp. Co., Ltd*, C.A. No. 2019-0606-JTL. Then, on October 1, 2019, petitioners docketed various documents in the Delaware Court of Chancery, including a document purporting to be a Delaware Court of Chancery "default judgment" as to the DRAA Agreement awards. *See* ECF No. 20-13. They then filed the docketed "default judgment" in six separate Delaware Superior Court actions and obtained judgments to try to enforce the DRAA Agreement award against, among others, AB Stable VIII.

But in January 2020, Judge Laster, the Chancery Court judge, ordered the judgments vacated. Order of January 15, 2020, 2019-0605, *World Award Found. Inc. v. Anbang Ins. Group Co., Ltd*, (Del. Ch.). Six months later, in July 2020, he entered judgment for the respondents in the case before him, Anbang Insurance Group Co., Ltd. and Beijing Great Hua Bang Investment Group Co., Ltd., and refused to "enter, confirm, or deem confirmed" any arbitration award or judgment related to the DRAA Agreement. *World Award Found. Inc. v. Anbang Ins. Group Co., Ltd*, 2019-0605 (JTL), 2020 WL 3799714, at *1 (Del. Ch. July 02, 2020) (cleaned up). He also

ordered that the document purporting to be a Delaware Court of Chancery "default judgment" that petitioners filed was "of no legal force or effect." *Id.* He enjoined petitioners from "representing to any court or person that as a result of this action or any filings made in this action [they] hold title to, or have any real property interest in, any of the properties owned by Dajia or its subsidiaries." *Id.* And finally, he ordered respondents in that case to provide documents to the state's Office of Disciplinary Counsel to consider disciplinary action against petitioners' lawyers. *Id.* The lawyers then withdrew, petitioners appealed the judgment pro se, but their appeal was ultimately dismissed. *World Award Found. Inc. v. Anbang Ins. Grp. Co.*, 241 A.3d 217 (Del. 2020).

### C.     Procedural Background

Plaintiffs filed this suit in October 2020. They named as Defendants AB Stable VIII, Judge Laster, Belger, and various Chinese government officials and entities. On January 4, 2021, they filed a motion for a Temporary Restraining Order.[2] ECF No. 4. On January 11, the case was assigned to the undersigned, and on January 12, the Court denied the motion for a temporary restraining order, after finding that Plaintiffs failed to establish that they were likely to succeed on the merits or that they were likely to suffer irreparable harm. *See* Minute Order of January 12, 2021.

The next day, Plaintiffs, undeterred, filed an "emergency motion for appointment of temporary receivers/trustees" and a second, amended version of that motion. ECF Nos. 9 & 10. This motion asked the Court to appoint a temporary receiver "to preserving integrity and intact of the properties Plaintiffs claimed their rightful ownership under the imminent risk of being

---

[2] This motion seems to have been prompted, at least in part, by an attempted sale of the relevant properties by AB Stable VIII. *See AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, No. CV 2020-0310-JTL, 2020 WL 7024929, at *1 (Del. Ch. Nov. 30, 2020)

extinguished by Defendants' unlawful conversion." ECF No. 10 at 1.  Seemingly in response to the Court's previous assessment of the potential alleged harm as purely economic, Plaintiffs instead argued that the "size of the hot currency" was large enough that it "would be highly likely used to make . . . intercontinental ballistic missiles and aircraft carriers, aiming at the United States." ECF No. 10 at 5–6.  AB Stable VIII opposed that motion, ECF No. 20, and later moved to dismiss.  ECF No. 24.  Judge Laster and Belger also moved to dismiss.  ECF Nos. 27 & 31.  As of now, the foreign defendants have not yet responded.

## II.     Legal Standards

A motion to dismiss under Rule 12(b)(2) tests whether the Court may exercise personal jurisdiction over the defendant.  The plaintiff bears "the burden of establishing a factual basis for the exercise of personal jurisdiction." *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).  The D.C. Circuit has held that absent jurisdictional discovery or an evidentiary hearing on jurisdiction, a plaintiff can carry her burden by making "a prima facie showing" of personal jurisdiction.  *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (citation omitted).  To do so, a plaintiff need not "adduce evidence that meets the standards of admissibility reserved for summary judgment and trial." *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010).  Instead, "she may rest her arguments on the pleadings," bolstered by affidavits and other written materials. *Id.*  That said, she "cannot rest on bare allegations or conclusory statements." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998).  Rather, she "must allege specific facts connecting each defendant with the forum." *Id.*

## III.    Analysis

In their motions to dismiss, AB Stable VIII, Judge Laster, and Belger present myriad grounds for dismissal under Rules 12(b)(1), (2), (3), (5), and (6).  But the Court will start, as it

must, by considering whether it has jurisdiction. Because the Court will dismiss these three defendants for lack of personal jurisdiction, it need not reach their other arguments for dismissal.

### A.      **Personal Jurisdiction**

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (cleaned up). Personal jurisdiction comes in two flavors: general and specific. General jurisdiction allows the Court to hear any claim against the defendant, no matter where it arises. *See Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 25 (D.D.C. 2015). Specific jurisdiction, by contrast, allows the Court to hear only those claims that "arise[ ] out of or relate[ ] to the defendant's contacts with the forum." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 31 (D.D.C. 2013). This Court lacks personal jurisdiction, either general or specific, over AB Stable VIII, Judge Laster, and Belger.

#### 1.      **General Jurisdiction**

A court may "exercise general jurisdiction only when a defendant is 'essentially at home' in" that court's jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. "[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). A defendant may also be subject to general jurisdiction outside its paradigmatic forum so long as its contacts with that forum are "so substantial and of such a nature as to render [the defendant] at home in that State." *Id.* at 139 n.19.

This Court cannot find that it has general personal jurisdiction over AB Stable VIII. AB Stable VIII is a Delaware limited liability corporation, Compl. ¶ 169, and the only connection between AB Stable VIII and the District of Columbia raised by either party is that its subsidiary, Strategic, owns a real estate portfolio that includes the Four Seasons Hotel here.[3] True, D.C. Code § 13–334(a) authorizes general jurisdiction over a foreign corporation if it is "doing business in the District." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 42 (D.D.C. 2018). But the property at issue here is not directly owned by AB Stable VIII, so it is not doing business here. Moreover, although it is possible that Strategic's ownership of real estate in the District of Columbia could give rise to § 13–334(a) jurisdiction over AB Stable VIII if the two were alter egos, Plaintiffs have not plead or shown that they are.[4]

---

[3] According to AB Stable VIII, it owns the hotels indirectly through its subsidiary, Strategic Hotels & Resorts LLC ("Strategic"), and Strategic's subsidiaries. *See* ECF 24-1 at 28. AB Stable VIII is a subsidiary of Dajia Insurance Group, Ltd. ("Dajia"), a corporation organized under the law of the People's Republic of China. *Id*. And Dajia is the successor to Anbang Insurance Group, Ltd., which was also a corporation organized under the law of the People's Republic of China. *Id.* In support of its explanation of this ownership structure, AB Stable VIII cites to a Verified Complaint filed in related litigation, as well as a court opinion in that litigation in support of its explanation of this ownership structure. ECF 24-1 at 28 (citing Verified Complaint ¶¶ 2, 10, *AB Stable VIII LLC*, No. 2020-0310-JTL; *AB Stable VIII LLC*, 2020 WL 7024929, at *1). Plaintiffs, for their part, do not object to or challenge these jurisdictional facts. In response, Plaintiffs argue only that the property is "presumably under the oversight" of AB Stable VIII, implicitly acknowledging an indirect relationship. ECF No. 29 at 25. In addition, Plaintiffs have not moved for jurisdictional discovery or an evidentiary hearing. To the contrary, they represent that no such hearing is necessary, *see id.*, and suggest that no material jurisdictional facts are in dispute. *See Rundquist v. Vapiano SE*, 9-cv-2207 (BAH), 2012 WL 5954706, at *4 (D.D.C. Nov. 9, 2012).

[4] "Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . . affiliated corporations . . . . An exception exists, however, where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F.Supp.2d 66, 70 (D.D.C. 1998). To establish that a subsidiary is an alter ego of its parent, also referred to as "piercing the corporate veil," courts look to whether there is a unity of ownership and interest. *Id*. at 70 n. 3. The District of

This Court also lacks general personal jurisdiction over individual defendants Judge Laster and Belger. Both Judge Laster and Belger live and work in Delaware, and accordingly are not "essentially at home" in the forum to support general jurisdiction. *Daimler*, 571 U.S. at 127; *see* ECF No. 31-2 ("Decl. of M. Belger") ¶¶ 2 & 4; ECF No. 27-2 ("Decl. of J.T. Laster") at 1. And nothing in the Complaint suggests otherwise. Compl. ¶ 212 (alleging that Belger's "principal place of business" is in Delaware, while omitting any allegation concerning his domicile). Thus, the Court turns to whether it has specific jurisdiction over them.

### 2. Specific Jurisdiction

Due process also precludes the Court from asserting specific jurisdiction over AB Stable VIII, Judge Laster, and Belger. To establish specific jurisdiction, Plaintiffs "must show that jurisdiction is proper under both (1) the District of Columbia's long-arm statute and (2) the U.S. Constitution's Due Process Clause." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018).

---

Columbia Court of Appeals has stated that piercing the corporate veil requires showing that "'the corporation is not only controlled by those persons [alleged to be alter egos of the corporation], but also that the separateness of the persons and the corporation has ceased and . . . an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.'" *Camacho v. 1440 Rhode Island Avenue Corp.*, 620 A.2d 242, 249 (D.C. 1993) (quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984)). But the Complaint barely mentions Strategic and does not allege that it is AB Stable VIII's alter ego. And in Plaintiffs' response to AB Stable VIII's motion, they merely argue that the Four Seasons property is "in active business operation under the Defendants' oversight and management." ECF No. 29 at 24. They also analogize the "parental-subsidiary relationship" to "what Nuremberg Trial held six German organizations liable and accountable for Nazi's anti-humanity crimes." *Id.* at 27. These conclusory statements do not suffice to show that this Court has jurisdiction over AB Stable VIII because it is the alter ego of Strategic.

The District of Columbia long-arm statute provides, among other things, for "personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's":

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. Code § 13-423(a)(1)–(4). The plaintiff must identify which prong of the long-arm statute he is relying on as the basis for jurisdiction. *See FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1095–96 (D.C. Cir. 2008).

Plaintiffs argue that the first, third, and fourth prongs of the long-arm statute support jurisdiction. They argue that the Four Seasons Hotel in Washington, D.C., provides the basis for personal jurisdiction over AB Stable VIII, Judge Laster, and Belger. But because "personal jurisdiction analysis requires that a court determine whether jurisdiction over a party is proper under the applicable local long-arm statute and whether it accords with the demands of due process," *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), the Court will skip over examining the asserted prongs and instead proceed to the dispositive due process analysis. *See World Wide Travel Inc. v. Travelmate U.S., Inc.*, 6 F. Supp. 3d 1, 6–9 (D.D.C. 2013) (declining to address the requirements of § 13-423(a)(1), (3) and (4) because exercise of personal jurisdiction would violate the Due Process Clause).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Although a nonresident's physical presence within the territorial jurisdiction of the

10

court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To satisfy due process, there must be sufficient "'minimum contacts' between the defendant and the forum 'such that he should reasonably anticipate being haled into court there.'" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (citations omitted). "That is, there must exist 'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit related conduct create[s] a substantial connection with the forum.'" *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020). To create such a connection "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

As for AB Stable VIII, Plaintiffs have not alleged facts sufficient to show that this Court can exercise personal jurisdiction over it consistent with due process. Plaintiffs claim that the Four Seasons Hotel in Washington, D.C. provides a basis for specific jurisdiction over it, but as discussed above, the property is not owned directly by AB Stable VIII, and Plaintiffs do not plead or show that AB Stable VIII and Strategic are "alter egos" for jurisdictional purposes. And beyond the subsidiary-owned property, they do not allege or provide evidence of other contacts between AB Stable VIII and the District of Columbia at all, let alone those that arise from the claims in this suit. For these reasons, they have not shown that AB Stable VIII has purposefully

availed itself of the District of Columbia's laws or had sufficient minimum contacts with it. Thus, this Court may not assert specific personal jurisdiction over AB Stable VIII.

The Court also may not assert specific jurisdiction over Judge Laster and Belger consistent with due process. Plaintiffs do not allege that either Judge Laster or Belger purposefully availed himself of the privilege of conducting activities within the District of Columbia. In fact, Plaintiffs do not allege that they conducted *any* activities here. Instead, they suggest that their participation in Delaware state court proceedings involving corporate entities with an indirect connection to the District of Columbia is enough to establish personal jurisdiction. To be sure, a defendant's physical presence within a jurisdiction is not required for personal jurisdiction. *See Walden*, 571 U.S. at 283. But participation in Delaware court proceedings alone cannot establish minimum contacts in the District of Columbia; there is simply no reason for Judge Laster or Belger to have reasonably anticipated being haled into Court here. For all these reasons, the Court will dismiss AB Stable VIII, Judge Laster, and Belger for lack of personal jurisdiction.

## IV.  Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 26, 2021